[Civ. No. 1847.    Third Appellate District.—May 29, 1918.]

## WOOD & TATUM COMPANY (a Corporation), Respondent, v. W. H. BASLER, Appellant.

BROKERS' COMMISSIONS—SALE ON DIFFERENT TERMS FROM ORIGINAL AUTHORIZATION—APPROVAL BY OWNER—RIGHT TO COMMISSION.—Where real estate brokers, acting pursuant to a written authorization to make a sale of real estate upon certain terms, procured purchasers therefor upon somewhat different terms, and the owner accepted the deposit, signed a written approval of sale, and therein promised to pay the brokers the commission named in the authorization. the brokers were entitled to the commission, notwithstanding the sale was never consummated.

ID.—ABILITY OF PURCHASER—ESTOPPEL.—Where the owner accepts the purchaser procured by the broker, he is estopped from denying the purchaser's ability or willingness to complete the purchase.

ID.—ACTION FOR COMMISSIONS—EVIDENCE—OPINION OF PURCHASER'S ATTORNEY—DEFECTS IN TITLE.—In an action to recover broker's commissions, the written opinion of the purchaser's attorney as to the title is admissible, for the purpose of showing what specifications of supposed infirmities in title were directed to the vendor's attention.

ID.—DEMAND FOR COMMISSIONS—INTEREST.—Where the promise to pay a broker's commission is on demand, and the precise time when demand was made does not appear, it will be presumed that it was not made until the last moment before the filing of the complaint, and interest should be computed from that date.

APPEAL from a judgment of the Superior Court of Sacramento County. Z. B. West, Judge Presiding.

The facts are stated in the opinion of the court.

Elliott & Atkinson, and R. Platnauer, for Appellant.

Dunn & Brand, for Respondent.

BURNETT, J.—The action was for the recovery of a broker's commission for the sale of certain real property, and plaintiff had the judgment from which the appeal has been taken.

Plaintiff, being a real estate firm, entered into a written agreement with defendant on December 13, 1911, whereby the former secured an option for the purchase of certain real property, and the next day this was supplemented by another agreement signed by defendant, providing that "in consideration of the services to be rendered and the expense to be incurred by the Wood & Tatum Co., in promoting the sale of the real property hereinafter described, I hereby employ said Wood & Tatum Co. to sell and to have the exclusive right to sell for me all that certain real property," etc. The property and the terms of sale were therein described and in the last clause it provided: "and I agree to allow said Wood & Tatum Co. a commission of five thousand dollars out of the purchase price of said property."

By virtue of these agreements, W. G. Wood, president and manager of plaintiff, endeavored to form a syndicate to purchase the property, and he took three well-known citizens to the property and introduced them to defendant as prospective purchasers with himself. Finally, the four agreed to purchase the land on somewhat different terms from those presented in the original agreement of sale, and a written notification of this was given to defendant by said Wood. As to this, the latter testified: "At the time I served the notification on Mr. Basler I paid him six hundred dollars. Prior to the time of this notification I told him that I was syndicating the property, that I was interesting a number of gentlemen for its purchase. I explained to him that I had these various gentlemen interested, and that I had figured on making them purchasers. I told him the prospective purchasers

were Mr. Mitau, Mr. Snell, Mr. Lindley, and myself. That was before the notification of April 22d.''

The written notification appears in the transcript, and to it is attached the following:

"Approval.

"I hereby approve the sale of my property above described and acknowledge receipt of deposit of six hundred dollars and agree upon receipt of the balance of initial installment to convey the same to purchaser with a perfect title, free and clear of incumbrances, except as above.

"I also agree to pay Wood & Tatum Co. on demand a com-mission of five thousand dollars.

"W. H. BASLER."

It is upon this promise to pay that the action was brought.

We may say, generally, that we find nothing in the pro-ceedings opposed to good conscience or to public policy. Re-garding the evidence as we are required under the rule, we conclude that there was no over-reaching, no misrepresenta-tion, no concealment, nor fraudulent conduct in any respect on the part of respondent. We can see no reason why it was not entirely competent for the parties to voluntarily change the terms of sale, as seems to have been done, and we recog-nize no legal obstacle to the enforcement of the agreement as finally reached. Nor do we think there is any merit in the contention that no consideration exists for the promise to pay the five thousand dollars.

The consideration results from the services performed in securing purchasers for the land upon terms that were agree-able to and ratified by appellant. It is a matter of no conse-quence that in the beginning somewhat different terms were contemplated. The ratification by appellant of the contract made by respondent was the same in effect as though prior to the performance of the services a similar change in the contract of sale had been agreed upon by plaintiff and defendant. If A authorizes B to sell the former's property for ten thousand dollars and promises to pay him a com-mission of one thousand dollars, and the latter secures a pur-chaser for nine thousand five hundred dollars, and A ap-proves the sale and agrees to pay B a commission of nine hundred dollars, could there be any doubt of the sufficiency of the consideration for the promise? Of course, if Basler

had not approved of the change in the terms of sale, it could not be maintained that the agent had earned any commission, but we have no such case.

As to the extent of the services required of an agent to entitle him to his commission, the rule is well settled and no elaboration is called for. We find in the record ample evidence to show that the parties were able, willing, and ready to complete the purchase, and the failure of the consummation of the sale was due to the neglect of appellant to perfect his title. And, it may be added that appellant is estopped from objecting to the qualifications of the proposed purchasers for the reason that the evidence brings the case clearly within the principle announced in 4 R. C. L., p. 309, as follows: "Once the customer procured by the broker is accepted by the employer, the latter is thereafter estopped from denying the purchaser's ability or willingness to complete the contract, inasmuch as he is not bound to accept the offer of such person without a reasonable opportunity to inquire and satisfy himself in relation to it. Consequently his acceptance should estop him from denying anything against this claim except fraud on the part of the broker in inducing the acceptance." (See, also, *Carrington* v. *Smithers,* 26 Cal. App. 460, [147 Pac. 225].)

As we have seen, plaintiff notified defendant of the sale of the property, and informed him who were the purchasers. These parties were all known to the defendant. Defendant knew that plaintiff was trying to form a syndicate of these parties to take over the land, and he knew at the time of the notification of the sale just what interest in the property each one of these parties was to purchase. With knowledge of these things, defendant accepted the deposit of six hundred dollars, approved of the sale in writing, and promised to pay the said commission of five thousand dollars. He thereby accepted said purchasers upon his own responsibility, and could not thereafter dispute their capacity and disposition to make the purchase.

Some of the rulings of the court are criticized, but they are hardly of sufficient moment to justify specific notice.

We can see no objection to the action of the court in permitting the proposed purchasers to testify that they were able to pay their respective portions of the purchase price of the property. That was a matter, of course, peculiarly

within the knowledge of the witness, and the testimony simply amounted to a statement by the witness that he owned available money to apply to such purpose. There is no practical difference between asking a witness whether he is able to pay one thousand dollars for the property and whether he has one thousand dollars available for such purpose.

If appellant deemed the statement a conclusion or a mere opinion of the witness, it was open for him to test it on cross-examination as to the facts. And, we may add, that this was done with at least some of the parties. The ruling was in line with the case of *Healy* v. *Visalia R. R. Co.,* 101 Cal. 593, [36 Pac. 125], and other decisions.

An objection is urged because the written opinion of an attorney as to the title of and to the property was received in evidence. But it was the duty of the proposed purchasers, if they desired to require of defendant to convey a perfect title, to call his attention to the defects that he might have an opportunity to correct them. But the purchasers were dependent upon their attorney for such information, and the said opinion was admissible for the purpose of showing what specifications of supposed infirmities were directed to the attention of appellant. It does not explicitly appear that this opinion was read or shown to appellant, but it is a fair inference that his attorney was made acquainted with its contents in order that the proper correction might be made. It is not claimed that said opinion was binding upon appellant, or that the court might not have found, contrary to such opinion, that there was a good title, and, therefore, the proposed purchasers were in default. As to this, however, it may be said, that appellant virtually admitted that a suit was necessary to adjust the matter and that he would have his attorney attend to it. It may be added that no attempt was made to dispute the soundness of said opinion as to the defects in the title, and the case seems to have been tried upon the theory that said imperfections were conceded and that no effort was ever made by appellant to remedy the situation. Indeed, his defense to the action was based upon entirely different grounds.

Some other points are made, but with the exception of one to be noticed, they are without substantial merit.

37 Cal. App.—25

As we have seen, the promise was to pay five thousand dollars on demand. It would not be due, therefore, until demand was made or suit was brought. There is evidence in the record that a demand was made upon appellant, but the precise time does not appear. It would, therefore, probably be presumed that it was not made until the last moment before the filing of the complaint. (*Trumpler* v. *Cotton,* 109 Cal. 257, [41 Pac. 1033].)

Hence, interest should have been computed from this date, which was September 24, 1914 (Civ. Code, sec. 1917; *Taber* v. *Piedmont Heights Building Co.,* 25 Cal. App. 230, [143 Pac. 319].) But the court allowed interest from December 22, 1912. This was error, and the judgment is excessive to the extent of $614.10.

However, it is not necessary to reverse the judgment on account of this error. It is true that there is no finding of any demand or when the complaint was filed, but it is entirely clear from the transcript that the complaint was filed on said date, to wit, September 24, 1914, and it is a mere matter of computation to determine the amount of the interest from that date.

The judgment is, therefore, modified so as to provide for the recovery of five thousand dollars, and of $283.90 interest, instead of $898, and, as thus modified it is affirmed, neither party to recover costs.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 28, 1918, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 26, 1918.