[Civ. No. 2520. Third Appellate District.—November 28, 1922.]

L. L. FREEMAN, Respondent, v. IRVINE M. CREEL-MAN, Appellant.

[1] CONTRACTS—PURCHASE OF LAND—PAYMENT—UNCERTAINTY.—An agreement for the sale and purchase of land is not indefinite or uncertain, and therefore unenforceable, because of a provision therein to the effect that if a portion of the land which is bare is set out to trees by the purchaser in the following spring the purchaser is to pay a certain specified sum, and that if the trees are not put out that spring the purchaser is to pay a larger sum, the amount of which is specified; neither is such agreement indefinite or uncertain because of a provision therein that if the owner has placed an order for peach trees he is to turn his contract over with the land with the understanding that the purchaser is to receive the trees for the price named in the contract for their purchase.

[2] BROKER'S COMMISSIONS—PROCURING OF PURCHASER—CHANGING OF TERMS BY OWNER—FAILURE OF CONSUMMATION—RIGHT TO COMMISSION.—Where a real estate broker negotiates a sale with a party and the latter has consented to buy and is ready, willing and able to do so, upon the terms upon which the broker was authorized to negotiate the sale of the property, the right of the

---

2. Right of real estate broker to commission where sale is defeated by act of owner, notes, 2 Ann. Cas. 184; 20 Ann. Cas. 1024.

When real estate broker is considered procuring cause of sale or exchange, note, 44 L. R. A. 321.

broker to the agreed commission for negotiating such sale cannot be defeated by the act of the owner of the property in so changing the terms and conditions upon which the sale was to be made as to cause a failure of the consummation thereof.

[3] ID. — ACCEPTANCE OF PURCHASER — ABILITY AND WILLINGNESS TO COMPLETE CONTRACT — ESTOPPEL — FRAUD. — Where the purchaser procured by the broker is accepted by the owner, the latter is thereafter estopped from denying the purchaser's ability or willingness to complete the contract, unless the owner was induced to accept the proposition by reason of the fraud of the broker.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin for Appellant.

Richard Belcher and Lawrence Schillig for Respondent.

HART, J.—The plaintiff, a licensed real estate broker, and the defendant, on the twelfth day of October, 1920, entered into a written agreement whereby the first named was employed and authorized by the latter to sell for him (defendant) 110 acres of land, situated in the county of Sutter, for the sum of $450 per acre, the plaintiff to have the exclusive right to negotiate such sale for the term of sixty days from the date of the execution of the agreement and was to receive as compensation for his services so performed a commission of five per cent of the aggregate indicated purchase price of said land. On November 10, 1920, the plaintiff having previously conducted negotiations leading thereto, the following offer or proposal to purchase said land was addressed to the plaintiff by Ritz-Fasig Company, a copartnership:

"Marysville, Calif., Nov. 10, 1920.
"Mr. L. L. Freeman,
    "Marysville, Calif.
"Dear Mr. Freeman:

"In reference to the Creelman place situated 5½ miles northwest of Yuba City, Calif., and consisting of about 110 acres we wish to make the following offer:—

"First—We offer the sum of $450 dollars per acre which is to be paid in the following manner—if the forty acres

of bare land is set out to trees by us in the spring of 1921, we will pay Ten Thousand ($10,000) cash, but if the trees are not put out the spring of 1921 by us we are to pay Twelve Thousand ($12,000) Dollars. It is understood, however, that if Mr. Creelman has placed an order for the peach trees he is to turn his contract over with the land with the understanding that we are to receive the trees for the same price named in the contract.

"Second—At the time either of the above amounts are paid a contract is to be furnished also a deed is to be placed in escrow at the Rideout Bank with the instructions that said deed is to be turned over to us after the cash payment of Twenty Thousand ($20,000) Dollars has been made, we to furnish a first mortgage covering the remainder of the purchase price. It is understood that the proceeds of one-half of the gross of the 1921 crop is to be applied as a cash payment on the purchase price. If this amount is more than the amount required to make up the Twenty Thousand Dollar cash payment it is also to be applied to the purchase price, the rate of interest on all deferred payments is to be six per cent. An abstract is to be furnished with the contract, and we are to have said abstract for a long enough time (not to exceed thirty days) in which to examine said abstract and title.

"In making this offer we agree to take charge of the property and to till same in the same manner as other property in the same locality is handled.

"It is understood that we are to place upon the property such buildings or improvements as is necessary in our judgment.

"Third—It is understood that the remainder of the purchase price is to be paid on or before five years after the date of the contract, but we reserve the right to make any cash payment we wish to make on any interest paying date or six months thereafter.

"This offer is to be accepted or rejected by Mr. Creelman within a period of ten days from date hereof.

"Yours very truly,

"RITZ-FASIG Co.

"By LESTER H. FASIG."

On the day that the foregoing offer was delivered to plaintiff the sum of $500 was paid to him by the Ritz-Fasig Com-

pany as an earnest for the fulfillment of the obligations or terms contained in said letter and the following instrument thereupon executed by the said plaintiff and which, as will be observed, was approved by the defendant:

"Marysville, Calif., Nov. 10, 1921.

"Received from Ritz-Fasig Company the sum of Five Hundred ($500) Dollars as part payment on the purchase price of Forty-nine Thousand Five Hundred ($49,500) Dollars for the holding of Irvine M. Creelman consisting of about 110 acres and located 5½ miles northwest of Yuba City, Sutter County, California.

"It is agreed and understood that this receipt is to be attached to the offer submitted to me by Ritz-Fasig Company on this date, and is to cover all of the conditions named in said offer.

"It is agreed and understood that if the offer is not accepted by Irvine M. Creelman the sum of Five Hundred Dollars is to be returned to Ritz-Fasig Company.

"It is agreed and understood that if the offer is accepted and a safe, merchantable title cannot be furnished them the deposit is also to be returned.

"This receipt is given subject to the approval of the owner, Irvine M. Creelman.

"L. L. FREEMAN.

"Approved—

"IRVINE M. CREELMAN."

The plaintiff, claiming that he had thus produced within the time to which his authority to sell the land was limited a purchaser willing, ready and able to purchase the land upon the terms and conditions prescribed by the owner of said land, and further claiming that he was entitled to the stipulated commissions for the service so performed, and the defendant having refused to pay the plaintiff said commissions, brought this action to recover the sum of $2,475, alleged to be due him under his contract with the defendant to negotiate the sale of the said property.

The complaint sufficiently states a cause of action for the relief prayed for by the plaintiff. The answer specifically denies the material averments of the complaint and alleges that the defendant was, at all times after signing the above documents, ready, willing and able to comply with the terms thereof and to "perform all acts and conditions on

his part to be performed as therein set forth," but that neither plaintiff nor Ritz-Fasig Company "was either ready, willing or able to perform the covenants and conditions on their part to be performed as therein set forth, and because thereof and for that reason only the lands and premises therein referred to were not purchased from this defendant."

The parties waived a trial by jury and the cause was tried by the court, whose findings of fact and conclusions of law were favorable to the plaintiff, to whom, accordingly, judgment was awarded for the sum prayed for in the complaint.

A motion for a new trial by the defendant was denied and the appeal from the judgment, supported by a record prepared according to the alternative method, is prosecuted by the defendant.

The defendant contends that the writings above presented herein are so indefinite and uncertain as to the terms thereof that they are, as constituting the contract between the owner of the land and the proposed purchaser, incapable of specific enforcement; that, therefore, the agreement is not binding upon the parties and consequently the plaintiff failed to produce a purchaser, "ready, willing and able" to purchase the land. We perceive no ground upon which the contention can be maintained that the contract, as to the terms and conditions thereof, is ambiguous or uncertain or indefinite in any respect. The purchase price of the land, the times at which the payments thereof are to be made, the interest on deferred payments, the condition upon which a deed in escrow to be placed in the hands of a bank by the owner was to be delivered to the proposed vendee and the disposition of the proceeds of a named proportion of the crops of the year 1921, are all set forth in language so clear that the meaning thereof cannot possibly be misunderstood or misapprehended; and that the defendant must have thoroughly understood the terms of the offer which constitutes a part of the agreement is evidenced by the fact that he approved the same upon the presentation to him by the plaintiff of the document acknowledging the receipt of the $500 cash payment upon the making of the offer, which document, it will be noted, expressly makes itself a part of the offer to purchase the premises by Ritz-

Fasig Company. [1] A point is sought to be made out of the fact that the agreement contains two alternative propositions as to the first cash payment, to wit, that if the forty acres of bare land are set out to trees by Ritz-Fasig Company in the spring of 1921 it will pay $10,000 cash, but if the trees are not put out in the spring of 1921 by said offerer it is to pay $12,000 cash and that if the owner has placed an order for the peach trees he is to turn his contract over with the land with the understanding that the vendee is to receive the trees for the price named in the contract. There is nothing indefinite or uncertain about these provisions. Whether the sum of $10,000 or that of $12,000 should be paid upon the execution of the agreement of sale, depended upon a contingency which is readily determinable by the fact itself—that is, whether the forty acres of bare land are or are not set out in trees by the proposed vendee in the spring of 1921. Likewise the proposition whether the owner had placed an order for peach trees to be planted in said forty acres is readily capable of determination by a readily ascertainable fact—that is, whether the owner has made any such contract. If he has he must turn it over to the vendee in precisely the same terms and conditions as he (the owner) made it. Of course, it will not be doubted that these matters may be shown—indeed, the offer in these respects in its very nature contemplates that they shall so be shown—by evidence *aliunde*, and thus, even though it might be said that the offer upon its face was uncertain in those particulars, the uncertainty would be removed when a particular one of the two alternatives is adopted. Such an agreement, in fact, comes within the letter as well as the spirit of the maxim declared in section 3538 of the Civil Code, "that is certain which can be made certain." There are other particulars in which it is claimed that the offer is indefinite and uncertain and which renders the agreement to sell and purchase unenforceable. Only one or two of these objections need be taken notice of herein, since the writings constituting the offer and acceptance are herein reproduced *in haec verba* and themselves, we think, plainly negative any contention that said writings have no binding force upon the parties thereto. One of the objections here referred to is that it is not made to appear by the offer, by whom taxes upon

the land are to be paid during the time that the deed remains in escrow. There is no merit to this proposition. The offer plainly stipulates that the deed shall remain in escrow until the cash payment of $20,000 on the purchase price shall have been made, when it was to be delivered to the purchaser, the latter to give the seller a mortgage on the premises to secure the unpaid balance of the purchase price, and thereupon to take "charge" or, what amounts to the same thing, possession of the property. In other words, the proposition is that a sale of the premises to the Ritz-Fasig Company should be effected by the payment of the $20,000 and the giving of the mortgage by said firm to the seller to secure the balance of the purchase price. Upon the performance of these acts, the title would, of course, immediately vest in the purchaser, and, necessarily, the latter would thus have imposed upon it the duty of paying all taxes assessed against the premises, failure to do which would entail upon it the usual consequences of such a default. Another objection is that the agreement upon its face is unreasonable. We do not think so. To the contrary, it thus appears to be fair and just as to both parties. Nor, as we shall later perceive, does the evidence show that the agreement is unreasonable or unfair. Counsel for the defendant cites a large number of cases which he claims sustain the view that the contract here is too uncertain and indefinite to render it capable of specific enforcement. Many of these cases involve actions for the specific performance of contracts. In none of them, however, do we find the facts to be analogous to the facts of this case. In other words, the contracts dealt with in the cases relied upon by defendant are entirely different from the contract with which we are here dealing. It follows from the foregoing views that if the evidence does not show that the failure to consummate the sale according to the terms of the agreement above considered was due to the fault of the plaintiff then the latter, having caused the minds of the defendant and the Ritz-Fasig Company to meet and agree upon the terms and the conditions set forth in said agreement of sale, has earned the compensation which the defendant agreed to pay him for negotiating such sale.

This brings us to a consideration of the evidence.

It appears that the firm of Ritz-Fasig Company was composed of H. S. Fasig, his son, Lester H. Fasig, and his son-in-law, George Ritz. It will be observed that the offer was executed and delivered to the plaintiff for and in the name of the firm by Lester H. Fasig. H. S. Fasig testified that the offer was thus executed and delivered to the plaintiff with the consent of all the members of the firm.

After the offer was delivered to the plaintiff and accepted by the defendant, the Fasigs visited Yuba City on three different occasions for the purpose of consummating the deal. To this end an abstract of the property was demanded by said parties and by the defendant delivered to them or their attorney, A. C. McLaughlin, Esq., of Yuba City. An examination of the abstract disclosed that there was a mortgage upon the land of the defendant in Sutter County, embracing, also, the premises in question. Of the existence of this mortgage lien upon the premises in question Fasig stated that neither he nor his partners had any knowledge until the fact was revealed to him through the examination of the abstract. H. S. Fasig and the defendant had several meetings and said Fasig declared to him on all occasions that he was willing, able and ready to purchase the premises according to the terms of his offer, provided the defendant would relieve the premises of the lien of the mortgage. Fasig, on the occasion of his first meeting with the defendant, stated that he had no objection to a mortgage being on the premises but that he did not desire that the land which he proposed to purchase should be subject to a mortgage lien which covered other lands of the defendant. He insisted that the lien of the mortgage should be removed from the property before he would carry out the transaction. Fasig testified that the defendant "was not willing to give us a deed of clear title." (Trans. p. 29.) Another point of difference arose between them on the same occasion in this: that the defendant insisted that after the sale and the Ritz-Fasig Company took possession of the property, he (defendant) should have control of the crops then growing upon the premises so he could be certain that he would receive the one-half gross profits thereof as prescribed in the offer. To this the Fasigs objected, claiming that such an arrangement would not be in accord with the terms of his offer. The parties separated without carrying out the option

agreement. But subsequently the Fasigs returned to Yuba City and held further negotiations with the defendant and again offered to purchase the premises upon the terms and conditions prescribed in the offer. The defendant still insisted upon having control of the fruit crops and after another meeting, with the same result, the transaction was called off.

The facts above stated were testified to not only by H. S. Fasig but also by his son and other witnesses who were present at one of the meetings held in the plaintiff's office in the city of Marysville.

It is true that the defendant contradicted the testimony so given. In fact, he testified that at the meeting at plaintiff's office in Marysville he explicitly offered to sell the property to the Ritz-Fasig Company upon the terms and conditions of its offer, but that it flatly refused to make the purchase. This testimony by the defendant was positively contradicted in rebuttal by several witnesses who were present in said office on the occasion of the meeting referred to. Thus a conflict in the evidence arose and it was for the court to determine that conflict. The implied finding upon that proposition is conclusive upon this court. But, however this all may be, it is clear from the testimony presented by the plaintiff and the findings of the court that their failure to consummate the deal was not due to any fault of the plaintiff.

The law relating to contracts by which real estate brokers are authorized to sell property for others on commission is well settled. Mechem on Agency, section 967, states the general rule as follows:

"If, within the time limited, the broker has produced a purchaser who is ready, willing and able to purchase upon the terms prescribed, the principal cannot evade the payment of the broker's commission by then refusing or neglecting to consummate the sale . . . , or by selling the property to another, or by so negligently dealing with the proposed purchaser as to lose the benefit of the sale."

And, "in consonance with the rule as thus stated, it has been held that if the broker has fulfilled upon his part, 'he will be entitled to his commissions, although the sale is not consummated because the principal's title proves defective (*Hamlin* v. *Schulte,* 34 Minn. 534 [27 N. W. 301];

*Goodridge* v. *Holladay,* 18 Ill. App. 363; *Gonzales* v. *Broad,* 57 Cal. 224; *Knapp* v. *Wallace,* 41 N. Y. 477; *Doty* v. *Miller,* 43 Barb. 529; *Sibbald* v. *Bethlehem Iron Works,* 83 N. Y. 378 [38 Am. Rep. 441]), or because the principal's wife refuses to join in the conveyance (*Clapp* v. *Hughes,* 1 Phila. (Pa.) 382), or because the purchaser refuses to complete the sale on account of false representations made by the principal.' " (*Glentworth* v. *Luther,* 21 Barb. 145; *Justy* v. *Erro,* 16 Cal. App. 519, 522 [117 Pac. 575].)

[2] To the foregoing it may be added that, if the broker is the procuring cause of bringing to the owner of the property a person who is ready, willing and able to purchase such property upon the terms prescribed by the owner and the latter thereafter changes the terms or conditions upon which he authorized the broker to make the sale, thereby frustrating the sale to the purchaser so procured, the broker is, nevertheless, entitled to the compensation which the principal agreed to pay him for negotiating the sale. In other words, if the broker negotiates the sale with a party and the latter has consented to buy and is ready, willing and able to do so, upon the terms upon which the broker was authorized to negotiate the sale of the property, the right of the latter to the agreed compensation for negotiating such sale cannot be defeated by the act of the owner of the property in so changing the terms and conditions upon which the sale was to be made as to cause a failure of the consummation thereof.

[3] But the defendant, having accepted a purchaser procured by the plaintiff, and no fraud on the part of the plaintiff in inducing the acceptance of the proposition to sell being shown, the ground upon which or the reason for which the sale was not consummated—whether through the fault of the defendant or the proposed purchaser—is immaterial, for the case clearly falls within the rule stated as follows in 4 Ruling Case Law, 49:

"Once the customer procured by the broker is accepted by the employer, the latter is thereafter estopped from denying the purchaser's ability or willingness to complete the contract, inasmuch as he is not bound to accept the offer of such person without a reasonable opportunity to inquire and satisfy himself in relation to it. Consequently his acceptance should estop him from alleging anything against the

claim except fraud on the part of the broker in inducing the acceptance."

The said rule has been approved by a number of California cases, among which are *Carrington* v. *Smithers,* 26 Cal. App. 460, 461 [147 Pac. 225], and *Wood & Tatum Co.* v. *Basler,* 37 Cal. App. 381, 384 [173 Pac. 1109], an application for a hearing in the supreme court in the latter case having been denied.

It should be suggested that, in view of the last-mentioned rule, within the doctrine of which we think the case here falls, the attorney for the plaintiff objected in the court below to the evidence regarding the circumstances under which the failure to complete the sale was brought about. Without deciding whether the evidence was wholly immaterial for any purpose, we may say that we regarded it as proper to consider herein the evidence and also the contention of the defendant as to the asserted ambiguity of the agreement between the defendant and Ritz-Fasig Company for the sale of the property, thus showing that in any view of the case the judgment cannot be disturbed.

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.