[Civ. No. 3073. Third Appellate District.—July 10, 1926.]

## C. L. CAINE, Respondent, v. E. V. BRISCOE, Appellant.

[1] BROKER'S COMMISSIONS — ACCEPTANCE OF OFFER TO PURCHASE — FINANCIAL STANDING OF PURCHASERS—LOST INSTRUMENTS—BURDEN OF PROOF—EVIDENCE.—In an action by a broker to recover a commission for negotiating a sale, the defendant having set up the special defense that, after his acceptance of the offer of the purchasers to buy on certain terms, a writing was executed between the broker and himself by which it was agreed that defendant should have the right to investigate the financial standing of the purchasers before the sale was to be completed, and said writing having been lost, the burden was upon defendant to prove the contents of the writing.

[2] ID.—DEFENSES—BURDEN OF PROOF—VERDICT.—In such action, the question whether the defendant succeeded in sustaining the burden cast upon him to establish the special defense that, after his acceptance of the offer and before the sale was completed he was to have the right to investigate the financial standing of the purchasers, in accordance with an agreement between himself and the broker contained in a writing which had become lost, was one for the jury; and the implied finding of the jury that defendant did not sustain such burden is supported.

[3] EVIDENCE — LOST INSTRUMENTS — PROOF OF CONTENTS.—Secondary proof of the contents of a written instrument imposing duties or obligations upon the parties thereto should be clear, or not of a doubtful character in probative worth.

[4] BROKER'S COMMISSIONS—ACCEPTANCE OF PURCHASER—ESTOPPEL.— Where a customer procured by the broker is accepted by the employer, he is thereafter estopped from denying the purchaser's ability or willingness to complete the contract.

[5] ID.—WAIVER OF COMMISSION—EVIDENCE—APPEAL.—In this action to recover broker's commission, where the evidence was conflicting upon the issue raised by defendant that in a transaction between defendant and the purchasers culminating in a rescission, plaintiff had agreed to waive any right he might have to a commission from defendant for negotiating the sale, and such issue was submitted to the jury and the latter instructed thereon, its conclusion that plaintiff made no such waiver is conclusive on appeal.

3. See 16 Cal. Jur. 703; 17 R. C. L. 1197.
4. See 4 Cal. Jur. 592; 4 R. C. L. 309.

[6] ID.—PROCURING PURCHASER—RIGHT TO COMMISSION—FAILURE OF OWNER TO COMPLETE SALE.—In such action, where the broker's obligation was to negotiate a sale of the properties, or to be instrumental in selling the same, and he procured purchasers ready, willing, and able to buy the properties, and but for defendant's acts the sale would have been effected according to defendant's own terms, plaintiff was entitled to his commission; and the execution of a deed of conveyance by defendant to the buyers was not required as a prerequisite to the right of plaintiff to recover his commission.

[7] ID.—AGREEMENT OF SALE—OFFER AND ACCEPTANCE.—In such action, the offer of the purchasers to buy the properties placed in the broker's hands at the price and on the terms set forth in their written offer, and the written acceptance thereof by the seller, constituted an agreement of sale entitling the broker to his commission.

[8] ID. — INSTRUCTIONS — ADMISSIONS. — In such action, defendant's criticism of an instruction that it "ignored the element of the admitted facts in evidence concerning appellant's special defenses," is without merit, there being no "admitted facts" relative to such defenses.

(1) 9 **C. J.**, p. 646, n. 2.   (2) 9 **C. J.**, p. 657, n. 57; 22 **C. J.**, p 1044, n. 49.   (3) 22 **C. J.**, p. 1044, n. 49.   (4) 9 **C. J.**, p. 600, n. 53 New.   (5) 4 **C. J.**, p. 858, n. 3.   (6) 9 **C. J.**, p. 624, n. 68.   (7) 9 **C. J.**, p. 591, n. 20.   (8) 9 **C. J.**, p. 662, n. 72.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

George Cosgrave for Appellant.

N. Lindsay South for Respondent.

HART, J.—The plaintiff brought this action to recover a judgment from the defendant for the sum of $10,000, alleged to be the amount of the compensation which defendant agreed to pay plaintiff for negotiating the sale of certain real property and certain personal property belonging to the former. The issues of fact were tried by a jury, who returned a verdict in favor of plaintiff for the sum of $4,000. Judgment was entered accordingly and

6.   See 4 **Cal. Jur.** 683.

this appeal is by the defendant from said judgment upon a record made up according to the terms of section 953a of the Code of Civil Procedure.

The real property involved herein consists of 120 acres, with improvements, the property of defendant, and is situated in Fresno County. Eighty acres of the land, at the time of the negotiations herein concerned, were in producing grape-vines of the Alicante variety and forty acres in producing grape-vines of the Thompson variety.

In July, 1922, the defendant Briscoe entered into a written agreement with C. L. Caine, plaintiff, a real estate broker of the city of Fresno, authorizing said Caine to sell said property. Said agreement is, in part, as follows:

"Fresno, Calif., July 22nd, 1922.

"I hereby appoint C. L. Caine Co. of Fresno, my agent with exclusive right to sell the property described on the reverse side of this card, for the price and under conditions hereon described or for any less amount hereafter authorized by me, and receive deposit on the same. I agree to furnish deed and abstract showing clear title in me to date, and should C. L. Caine Co. sell such property or be instrumental in selling the same, I agree to pay them. And for and in consideration of the sum of one dollar paid to me by C. L. Caine Co. receipt of which is hereby acknowledged, I do hereby grant to said C. L. Caine Co. during the life of this agreement the exclusive option to buy said property for said price, less the amount of said commission, and upon said terms and conditions.

"This authorization is to remain in full force and effect for 5 days only.  $10,000.00 Com.

"Name: E. V. BRISCOE
"Address: Kerman, R. R. 2, Box 79
"Phone          "          "

The "reverse side" of said agreement contained a description of the real property, the several buildings, including the residence, situated thereon and an enumeration of various articles of personal property—equipments commonly employed in the cultivation and growing of grapes, also wagon, horses, other cattle, chickens, etc. The terms were: "Cash $50,000.00; Balance, $50,000.00 every year; $50,000.00 out of this years crop above $240,000.00, Jan. 1, 1923."

Acting upon the foregoing authorization, the plaintiff immediately started negotiations for the sale of the properties described in the writing to Vincent Masciello, Nick Iannello, Dominican Masciello, and Louis Albino, residents of Brooklyn, New York, who had been for some time and were engaged as copartners in the business of buying, shipping, and selling grapes in said city, and who were at the time of said negotiations, in the city of Fresno. These parties thought favorably of the proposition of sale and purchase upon the description of the properties given by the plaintiff, and, accordingly, either upon the day the agreement between plaintiff and defendant was executed, or the day following, accompanied one Harry Faith, a clerk in the office of plaintiff, to the land and inspected the properties. It appears that no particular price to be paid for the properties was stated by plaintiff or Faith to Albino and his partners before arriving at the ranch. The buyers, as we shall hereinafter refer to Albino and his partners, looked the properties over and, stating that they desired to consider among themselves the proposed deal before reaching a conclusion with respect thereto, returned with Faith to the city of Fresno. On the following day they again, accompanied by Faith, visited the premises and examined and inspected the properties. On this occasion the buyers, for the first time, met Briscoe, the owner of the properties and the defendant herein. The former discussed the properties and the proposition to buy the same with Briscoe and then asked him the total amount he desired for the properties and as to the terms of payment. Briscoe asked the total sum of $300,000, or approximately that sum for the properties. After some discussion as to the price, the proposed purchasers offered Briscoe the sum of $270,000 for the ranch and the personal property specified in the listing agreement executed to plaintiff by Briscoe. The latter agreed to accept the last-mentioned sum and the terms of payment were also agreed upon. On the twenty-fifth day of July, 1922, in pursuance of an understanding to that effect, Briscoe and the proposed buyers met at the office of the plaintiff in Fresno and there the proposed buyers executed a written offer and agreement to purchase the properties. Upon the execution of said written offer or agreement the

proposed buyers delivered to plaintiff for defendant and in the latter's name their certified check for the sum of $5,000. The initial language of said writing expresses acknowledgment of the receipt of the check just referred to "as and for deposit and partial payment of $270,000, the full purchase price of certain real property" (described), together with certain described personal property, including a large crop of grapes, "which the purchasers agree to purchase" for the total sum above named, payable as follows:

"$15,000.00 cash (including the amount herein receipted for) upon the execution and delivery of a good and sufficient deed or contract for a deed conveying said property to purchasers, together with abstract or certificate of title, to be furnished at the owner's expense, showing title to said property to be in the said owner, free and clear of all incumbrances whatsoever, except as otherwise herein expressly stated.

"Balance of the purchase price to be secured and paid as follows: By contract payable $35,000.00 October 15th, 1922. It is understood that this $35,000.00 will be secured by promissory notes made in the sum of $1000.00 each from the date that the first car of grapes reaches its destination, then the balance of the notes shall become due in forty-five days. Purchasers agree to make a payment of $50,000.00 on January 1, 1923. Balance of $170,000.00 shall be paid on the following terms: $50,000.00 in 1924, January 1, and $50,000.00 each year thereafter until the purchase price has been paid. It is further agreed that the seller will guarantee 1922 crops to be 800 tons of green grapes on the above described property. It is understood that in case a frost shall damage the crops growing on the above described property to make less than 400 tons of green grapes second party for that year only shall pay interest and no principal.

"Time is made of the essence of this agreement and it is understood and agreed that the sale of said property upon the terms herein set forth is subject to the approval of the owner of said property, but that said terms and conditions shall be agreed to and accepted by said owner within three days from this date or the deposit herein re-

ceipted for shall be refunded to said purchasers immediately thereafter, upon demand. . . .

"If the purchaser does not complete the purchase as hereinbefore provided within five (5) days after notice from the owner of his ability and readiness to convey said property as herein provided, then the said deposit shall be forfeited as liquidated damages, and it shall thereupon be paid, less the commission of the undersigned agents, to the owner." (Signed by buyers.)

The terms of said offer were, immediately, or on the same day that the offer was executed, accepted in writing by defendant, the same being indorsed or written on the sheet or sheets of paper containing the offer itself. The acceptance was in the following language:

"I hereby agree to all the conditions herein contained.
          "Telephone ————          Address

"I hereby accept the above price and terms, and agree to execute and deliver a good and sufficient deed or contract for a deed conveying said property to said purchaser as above stated, together with Abstract or Certificate of Title showing title to said property to be free and clear from all incumbrances except as otherwise herein expressly stated, and I further agree to pay C. L. Caine Co. $10,-000.00 as their commission for negotiating said sale.
          "Telephone          "E. V. BRISCOE, Owner
                    "Address          "

"Duplicate"

The above documents were prepared in triplicate, one being retained by the buyers, one by the seller (defendant) and the third by the plaintiff. For reasons to be hereinafter explained, the defendant refused to convey the properties to the buyers.

The foregoing embraces a general statement of the facts. They are substantially so stated in the complaint, together with the allegation that the plaintiff, after being authorized as indicated to negotiate the sale of the properties, procured, within the time specified in the authorization, purchasers ready, willing and able to purchase the same on the terms prescribed by and in the writing last referred to.

The answer denies the averments of the complaint, except as to the writing vesting plaintiff with the authority

of agent to sell or negotiate the sale of the properties and the written offer by the buyer to purchase the properties and the like acceptance by defendant of said offer. As to these agreements, the answer alleges that, on the real property described in said documents and in the complaint, there were, at the time of the execution thereof, "a crop of grapes of the value of $75,000.00, and defendant stated to plaintiff that the said 'Exhibit B' (the writing last above referred to) was not satisfactory to him because, by the execution thereof, the purchasers would be able to and would convert the said crop upon said premises to their own use and defendants would have no security for the further and additional payments, and unless the said purchasers were financially responsible, he would not agree to sell upon the terms and conditions contained in said 'Exhibit B'; that plaintiff then and there advised defendant that he could take a reasonable time to investigate the financial standing and worth of the said purchasers named in said contract, being plaintiff's said 'Exhibit B,' and unless he were satisfied with the result of such inquiries, defendant need not accept the said contract. That said 'Exhibit B' was written in duplicate and one copy thereof delivered to defendant; that plaintiff thereupon endorsed upon defendant's copy of said 'Exhibit B,' a writing to the effect that defendant should have a reasonable time in which to inquire into and ascertain the financial standing and worth of the said purchasers named in said contract, and would then notify plaintiff whether or not he elected that said contract become effective; that within said time, defendant made such inquiry and ascertained that the said proposed purchasers were not financially responsible and thereupon notified plaintiff that the result of his inquiry was not satisfactory and by reason thereof the said contract never became effective and was never executed on behalf of defendant."

The defense thus set up presents the point first relied upon for a reversal by defendant. The second point urged is that the written offer and acceptance (exhibit B) "contemplated an additional and complete agreement between the parties when, and when only, the sale would be completed, and that the purchasers found by respondent were

never willing to enter into such an agreement." A third point is practically that the jury were instructed upon matters of fact.

The point first adverted to arises out of the following circumstance: Within a few minutes (fifteen or twenty) after "Exhibit B" and the acceptance of the terms thereof were executed, respectively, by the buyers and the defendant, the latter, with Faith, entered another and separate room from that in which the documents were executed, and there entered into and executed a writing, the nature of the real tenor of which is in dispute. This writing, which was upon a "slip of paper," could not, after this action was instituted by plaintiff, be found, and was, therefore, not available at the trial, although defendant, so he testified, attached it to "Exhibit B," and delivered it as so attached to his attorneys. The loss of the "slip" having been shown, an attempt was made to prove the contents thereof by parol. The defendant testified that said writing embraced an agreement between him and Faith to the effect that the sale should not be consummated until he, after a reasonable time, was able to secure a report from New York on the financial responsibility of the buyers to purchase the properties and fulfill in every material particular the terms of "Exhibit B."

Mark Hall, assistant cashier of the Valley Bank of Fresno, but at the time the transactions involved herein were in progress holding a like position in the Fidelity Bank, of the same place, testified that he was familiar to some extent with said transactions; that, while he never saw the "slip of paper" containing an agreement between Briscoe and Faith to the effect that the former, before consummating the sale, was to be accorded an opportunity to investigate the financial standing of Albino and his partners in New York, he had, nevertheless, heard it discussed by Faith and Briscoe, and, in effect, he said, from such discussion, understood that such an agreement was contained in said "slip," signed by Faith and Briscoe.

[1] Faith testified that, within a short time after "Exhibit B" was executed by Briscoe and the buyers, he and the former stepped into an adjoining room primarily for the purpose of discussing the matter of the time at which

the buyers should be given possession of the properties and also the proposition of selling his furniture to the buyers. Faith testified that the writing on the "slip of paper" prepared by Briscoe, and signed by the latter and the witness, so far as he was able to recall, referred entirely to the sale of the furniture to the buyers, the latter having agreed to pay the sum of $5,000 therefor. Faith, further referring to said "slip of paper," stated that, after it was signed by him and Briscoe, the latter took possession of it and that he (Faith) had never thereafter seen it, nor did he know what Briscoe did with it. This is substantially all the testimony relative to the stipulations of the writing now in question. The burden was upon the defendant to prove the contents of said writing. This is so for the reason that the allegation of the answer that by said writing it was agreed that, before the sale was to be completed, the defendant was to have and exercise the right to inquire into the matter of the financial standing of the buyers, and if such inquiry did not result satisfactorily to him, the defendant might refuse to accept the offer of the buyers, as set forth in "Exhibit B," involved a special or an affirmative defense. [2] It is manifest, from the face of the record, that defendant failed to sustain that burden. The testimony introduced by the defendant respecting the contents of said writing seems upon its face to be unsatisfactory. Indeed, the only direct testimony as to the nature of the stipulations of said writing, so far as defendant's position was concerned, was Briscoe's testimony. Hall's testimony amounted to no more than a conjecture that the alleged stipulation accorded to the defendant a reasonable time, after he accepted the offer of the buyers, within which to prosecute an inquiry with regard to the financial ability of the latter before the offer and the acceptance were to become binding upon him. The only testimony, other than that of Briscoe and Hall, bearing upon the matter, was that of Faith, testifying for the plaintiff. His testimony, it is true, was not of a positive character, but it represented his best recollection, and, as seen, was to the effect that the said writing contained no stipulation that defendant was to be given an opportunity to investigate the financial standing of the buyers before he

would be required to convey the properties to Albino and his copartners, he stating, however (it may here be added), that subsequent to the making and the signing of the writing regarding the sale of the property and, consequently, after "Exhibit B" was executed by the buyers and the terms thereof accepted by him, the question of the financial ability of the buyers to consummate the deal according to the terms of the written offer and acceptance ("Exhibit B") was, for the first time, raised by the defendant. The question whether the defendant succeeded in sustaining the burden cast upon him to establish the special defense now being considered was, of course, one for the jury. Peculiarly is it true in cases where, as here, the contents of a lost or destroyed written document must be proved by parol testimony, thus placing sole reliance, for the support of an important issue, upon the frailties, or, as truly it may be said, the treachery of human memory, the burden of proving the fact necessarily carries with it more than the usual measure of responsibility.

[3] In other words, secondary proof of the contents of a written instrument imposing duties or obligations upon the parties thereto should be clear or not of a doubtful character in probative worth. Whether, therefore, we say that the testimony of Faith appears to be sufficient to have justly warranted the jury in concluding that the burden upon defendant to prove said special defense had not been satisfactorily supported or that Faith's testimony was such as to create in the evidence upon the question involved in said defense a substantial conflict, the result is the same. The trial court specifically instructed the jury upon the question and to the effect that if they found from the evidence that the plaintiff and defendant agreed in writing that the last named should have a reasonable time within which to inquire into and ascertain "the financial standing and worth of the purchasers," that defendant signed the contract to sell on the condition that he be given the opportunity to prosecute such inquiry, and that, upon making such inquiry, he "notified plaintiff that he was not satisfied with the financial responsibility of the purchasers," then the "contract to pay (plaintiff) the commission never became effective." The court further in-

structed the jury that, before plaintiff would be entitled to recover in this action, the jury would be required to find that he (plaintiff), within the time specified in the contract vesting him with authority to sell or negotiate the sale of the properties, procured ''purchasers who were able, ready and willing to buy on terms satisfactory to the seller.''

[4] Thus the special defense in question was directly submitted to the jury, and the verdict necessarily implies a finding by the jury that the writing executed by Briscoe and Faith immediately after ''Exhibit B'' was executed by the buyers and Briscoe contained no stipulation giving to Briscoe the right or an opportunity to investigate the financial standing of Albino and his copartners before the terms of said ''Exhibit B'' were to become binding upon Briscoe. The situation as it is presented to this court, then, is this: That Briscoe, without previously raising any objection to the proposed purchasers, either upon the ground that they were not possessed of the financial ability to carry out the deal or upon the ground that they were not willing to do so, entered into an agreement to sell the properties to the buyers and accepted their check for $5,000 as a payment. There was and is no claim made by defendant that he was induced to accept the offer of the buyers to purchase the properties by any act of fraud on the part of the plaintiff or that such acceptance was brought about through a mutual mistake regarding the facts or the terms of the offer. Hence, the case, so far as the present point is concerned, falls within the rule stated as follows in 4 Ruling Case Law, page 309: ''Once the customer procured by the broker is accepted by the employer, the latter is thereafter estopped from denying the purchaser's ability or willingness to complete the contract, inasmuch as he is not bound to accept the offer of such person without a reasonable opportunity to inquire and satisfy himself in relation to it. Consequently his acceptance should estop him from alleging anything against the claim except fraud on the part of the broker in inducing the acceptance.''

The said rule has been approved by a number of California cases, among which are *Carrington* v. *Smithers*, 26

Cal. App. 460, 461 [147 Pac. 225], and *Wood & Tatum Co.*
v. *Basler,* 37 Cal. App 381, 384 [173 Pac. 1109], an appli-
cation for a hearing in the supreme court in the latter case
having been denied. (See, also, *Freeman* v. *Creelman,* 60
Cal. App. 14, 23, 24 [212 Pac. 56].)

[5] It is next contended that plaintiff is not entitled to
recover in this action because, as is the claim, the contract
of sale was rescinded by the mutual agreement of the
buyers and the defendant, and that the plaintiff, in the
transaction culminating in the rescission, agreed to waive
any right he might have to a commission from defendant
for negotiating the sale of the properties. This proposi-
tion was set up in the answer as a special defense. Upon
that issue the evidence was in sharp conflict, and the court
specifically instructed the jury that, if they should believe
from the evidence that plaintiff; as alleged in the answer,
waived his right to compensation for procuring purchasers
of the property, it would be their duty to find for defend-
ant and also stated the converse of that proposition. It
follows that the implication from the verdict is that the
jury concluded that the plaintiff made no such waiver, and
this conclusion is conclusive upon this court.

In view of the foregoing considerations, it is not neces-
sary that we should minutely examine herein the testimony
disclosing the controversy which led to a refusal by the
defendant to perform the terms of the contract of sale.
It is enough to say that defendant claimed that a report
he received as to the financial ability of the buyers to
carry out the contract on their part was unsatisfactory to
him; that, after much bickering between the defendant and
the buyers followed the execution of "Exhibit B," it was
finally agreed that the contract of sale should be rescinded
upon the payment by the defendant to the buyers of the
sum of $750, and that said agreement was carried out.
Albino testified that he and his copartners were at all
times able and willing to purchase the properties upon the
terms set forth in "Exhibit B." One Luscher testified
that, just prior to the time when the agreement of sale was
canceled by the parties, he met the defendant in plain-
tiff's office; that he then said to defendant: "I heard you
sold your place out at Biola," to which defendant replied

that "he could sell it if he wanted to go on with the deal, but the price of Alicantes had advanced so fast that he considered it a bad deal and wanted to get out of it, and I said: 'Maybe you can't,' and he said he didn't know. He wasn't going on with it, if he could help it. I suggested to him that if he would settle with Caine on the commission end of it I was sure Caine would help him get out of the deal and he went out, saying that he would rather pay the commission than go on with the deal." This testimony would seem to have had the effect of weakening the foundation of defendant's special defenses. The jury, we may assume, so viewed said testimony.

[6] The point that the language of "Exhibit B" clearly indicates that before the sale should be completed the parties contemplated and intended that an additional agreement involving or amounting to an actual sale of the properties should be executed, that plaintiff's right to the specified commission depended entirely upon the execution by the parties of such contract of sale, and that, no such contract having been executed, the plaintiff, therefore, did not earn the commission prescribed, is without merit. The plaintiff's obligation was to negotiate a sale of the properties, or to be "instrumental in selling the same." He procured purchasers ready, willing, and able to buy the properties, and but for the act or acts of the defendant the sale would have been effected according to the defendant's own terms. [7] Indeed, the offer of Albino and his copartners to buy the properties at the price and on the terms set forth in the writing designated in the record and herein as "Exhibit B" and the written acceptance of said offer and the terms thereof by defendant, constituted an agreement of sale. The execution of a deed of conveyance by defendant to the buyers was not required as a prerequisite to the right of plaintiff to claim and recover his commission. As above suggested, the failure to consummate the deal, as we are authorized to assume from the verdict, was due entirely to the defendant, and his failure to perform in full his part of the contract cannot have the effect of denying to the plaintiff his right to the compensation for the services he rendered defendant as the same was fixed by the agreement between them.

[8] The last point urged for a reversal involves an attack upon one of the instructions given to the jury by the court. It is said that the instruction "ignored the element of the admitted facts in evidence concerning appellant's special defenses." There are, as above shown, no "admitted facts" relative to said special defenses. The criticism of the instruction is wholly devoid of merit.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.