[Civ. No. 7657. First Appellate District, Division One.—December 13, 1930.]

G. A. MALMSTEDT, Respondent, v. F. A. STILLWELL, Appellant.

Robert E. Austin, John N. Helmick and J. E. Stillwell for Appellant.

W. C. Shelton for Respondent.

THE COURT.—This action was brought by plaintiff, as assignor of W. I. Hollingsworth and B. O. Miller, copartners doing business under the firm name of W. I. Hollingsworth & Co., to recover a broker's commission. The assignors were at all the times herein mentioned duly licensed real estate brokers. The case was tried by the court, which found for the plaintiff, and judgment was entered accordingly.

Defendant, who has appealed, claims that certain of the findings are unsupported and that the court erred in its conclusions of law therefrom.

The facts established by the evidence were as follows: In September of 1921, J. P. Simonsen and J. A. Fleming, who owned the Fountain Cafeteria in Los Angeles, wished to purchase another cafeteria. This fact was known to the brokers, who were endeavoring to procure one for the prospective buyers. Defendant and A. L. Plotner, his part-

ner, owned and operated the Poinsettia Cafeteria, which was for sale. Knowing this, the brokers commenced negotiations with defendant for the purchase of the business, but refused to disclose the names of the prospective buyers until defendant promised to pay a commission in case of sale. This he agreed to do, and on September 28, 1921, signed and delivered to the brokers the following letter, referred to in the record as "plaintiff's exhibit 1":

"Gentlemen:—

"In the event a sale is consummated with your prospective tenant we hereby agree to pay you $2,000.00, a commission on the sale price of same.

"Yours very truly,

"F. A. STILLWELL."

At the same time defendant executed to the brokers a document referred to as "plaintiff's exhibit 2", which read as follows:

"Gentlemen:—

"For and in consideration of your service we hereby give you an exclusive option for forty-eight (48) hours to sell the Poinsettia Cafeteria and lease, including everything in use in it, and all broken packages, for $50,000, —$30,000 cash, and balance on or before six months from date of sale at the rate of 7% interest.

"Yours very truly,

"F. A. STILLWELL."

On September 30, 1921, defendant and his partner wrote thereon the following:

"9/30 this contract is to be nole and voide after 3:30 p. m. on 9/30.

"F. A. STILLWELL,

"A. L. PLOTNER."

"Contract to be drawn for the sale of the above."

The testimony shows that the figures 9/30 were intended to mean September 30th. On the date last mentioned, according to the testimony, the following—which will be hereinafter considered—was also written thereon by Simonsen, one of the owners of the Fountain Cafeteria:

"Accepted 9/30.21, 3 p. m.

"FOUNTAIN CAFETERIA,

"By J. P. SIMONSEN, Prop."

On September 28th the brokers called on the owners of the Fountain Cafeteria and showed them the above exhibit No. 2. They thereupon offered in writing to purchase the Poinsettia Cafeteria for $45,000, of which $25,000, including a deposit of $1,000 made at the time, was to be paid in cash and the balance on or before six months from the date the buyers should obtain 'possession. The writing—which was referred to as "plaintiff's exhibit No. 3"—was as follows:

"Received of Fountain Cafeteria check for $1,000, being a deposit and part payment of the purchase price of the Poinsettia Cafeteria, located at 441 South Hill street. The purchase price of said cafeteria as is, including all broken packages, to be $45,000.00 payable $25,000.00 cash upon delivery of possession, including the above deposit, on or before October 15th, and balance on or before six months from date of possession, at the rate of six per cent (6%) interest.

"Seller agrees to deliver said premises free and clear of all encumbrances, rents and insurance to be prorated. This deposit is taken subject to the approval of the owner, and if not accepted said check shall be returned to the purchaser. It is also given subject to the purchaser inspecting the said premises and lease.

"W. L. HOLLINGSWORTH & COMPANY,

"Per F. W. KADLETZ."

"We hereby agree to purchase the above described premises on the terms stated in this receipt.

"FOUNTAIN CAFETERIA,

"By J. P. SIMONSEN, Prop.

"J. A. FLEMING."

The offer was submitted to defendant either on the above date or the following day. He disapproved the terms, changed the purchase price stated therein to $50,000, the cash payment to $30,000, the rate of interest from six to seven per cent per annum, and also inserted therein the following: "All unbroken packages to be cash on invoice and dishes not in use." He then wrote thereon the following: "Approved by owner. F. A. Stillwell," and redelivered the writing to the broker's agent. According to the latter the writing was then returned to Simonsen and Fleming, who agreed to the changes made by defendant, at

3 o'clock P. M. of September 30th, wrote their acceptance upon exhibit No. 2 in the words and figures shown above.

It was testified that following this on the same day the document last mentioned was presented to defendant at his office.

It appears that the lease under which defendant held the premises provided that the same should not be assigned or the premises sublet without the consent of the lessor. It was testified by the agent for the brokers that defendant was unable to obtain consent to the transfer of the lease or the subletting of the premises, and so admitted, and that thereafter on October 17, 1921, the deposit made by Simonsen and Fleming was returned to them. It was shown, however, that the latter and defendant continued negotiations, and on November 20, 1921, a contract for the sale of the cafeteria was made between them. This contract recited that the lease mentioned could not be assigned without the consent of the lessor, and that the latter's consent could only be obtained upon the payment of an increased rental. As part of this transaction a new lease at an increased rent was executed by the owner of the premises to Simonsen and Fleming, and defendant by the contract agreed to sell the cafeteria to them for $45,000, $6,000 to be paid in cash and the balance in installments. The brokers' agent further testified that he was not consulted during these negotiations, and while he sought on several occasions to communicate with defendant the latter avoided him.

The findings which defendant contends are unsupported are as follows: The court found with respect to plaintiff's exhibits No. 1 and No. 2 that while "said two instruments were executed at the same time they were not one agreement, nor were they so understood by the assignors"; also "that prior to the expiration of said forty-eight hours before the hour of 3:30 p. m. on said 30th day of September, 1921, said assignors effected a sale of said cafeteria and lease to J. P. Simonsen and J. A. Fleming, who at the time were ready, willing and able to purchase the same, and who agreed to purchase the same at the terms set forth by said defendant and agreed to by said A. L. Plotner, and said J. P. Simonsen and J. A. Fleming were accepted as purchasers by said defendant".

■ While it is the rule that several contracts relating to the same matters are to be construed together (Civ. Code, sec. 1642), it does not follow that for all purposes they constitute one contract. ■ The brokers' agent claimed that the two in question were not so intended, and the court so found. But whether this was true or not does not affect the result, as it sufficiently appears that the brokers procured from the buyers a binding obligation to purchase in accordance with the terms proposed by defendant.

■ It is urged that there was no evidence that Simonsen and Fleming were able and willing to buy; but, as held in the following cases, where the owner accepts the buyer procured —which the evidence sufficiently shows was true in the present case—he thereby admits the readiness, willingness and ability of the purchaser to consummate the sale (*Wood & Tatum Co.* v. *Basler*, 37 Cal. App. 381 [173 Pac. 1109]; *Sobaje* v. *Schubert*, 37 Cal. App. 709 [174 Pac. 364]; *Freeman* v. *Creelman*, 60 Cal. App. 14 [212 Pac. 56]); and it has also been held that the execution by the owner of a contract of sale is conclusive proof that he is satisfied with the qualifications of the purchaser and his ability to carry out the terms of the contract (*McNamara* v. *Steckman*, 202 Cal. 569 [262 Pac. 297]). ■ While the defendant testified that the purchasers were unable or unwilling to make the payments provided, his credibility was a question for the trial court. We think it clear that the real reason for the failure to consummate the sale was defendant's inability to transfer the lease or sublet the premises. In this connection, although plaintiff's exhibit No. 2 expressly provided that the sale should include the lease, plaintiff's exhibit No. 3 made no express reference thereto, but provided only that the seller should deliver the premises free and clear of all encumbrances. However, as stated, these documents should· be construed together; and from the evidence taken as a whole it was manifestly the intention that the lease should. be included in the sale.

■ Stress is laid upon the further findings that after defendant was unable to procure a transfer of the lease, the agreement to purchase on the terms agreed was mutually abandoned. It is urged that this. finding refers to the brokers as well as to the parties to the agreement to pur-

chase. There is no merit in this contention. Moreover, the evidence sufficiently shows that there was no abandonment of the brokers' claim for commission, and that the deposit was returned only after the defendant had informed the brokers that he could not perform.

The evidence in many particulars was conflicting, and appellant urges that inferences supporting his contentions should properly have been drawn therefrom. The rule is well settled, however, that the inferences drawn by the trial court, if they find substantial support in the evidence—which was the case here—cannot be disturbed on appeal (*Russel* v. *Ramm,* 200 Cal. 348 [254 Pac. 532]) ; and whenever from the facts found other facts may be inferred which will support the judgment, such inferences will be deemed to have been made by the trial court (*Anglo-California Trust Co.* v. *Oakland Railways,* 193 Cal. 451 [225 Pac. 452]).

No other questions raised by appellant require discussion.

The evidence was sufficient to support the conclusions of the trial court, and nothing appears which would warrant a reversal of the judgment.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 12, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.