St. Charles v. Hackman.

## St. Charles, *Appellant*, v. Hackman.

### Division One, March 24, 1896.

1. **City:** MEAT SHOP LICENSE: PARTNERSHIP: ORDINANCE. A city license to keep a meat shop for one year was issued to L. & H., who then composed a partnership, but, within the year, the firm was dissolved and H., alone, continued the business. An ordinance required every "person, firm, corporation," etc., to obtain a license for such a shop under a penalty. In an action against H. for keeping the shop without a license, during the year, it was *held*, that the firm license was a compliance with the ordinance.

2. ———: LICENSE TAX: CONTRACT. A municipal occupation license tax is not a contract within the protection of the state or federal constitution. Under the police power a municipality may prohibit an occupation during the term for which it was licensed. Whether it may not then be under a duty to return the license fee, is not decided.

3. ——— : ———: JURY TRIAL. In a prosecution to enforce a penalty under a license ordinance, defendant may waive his right to a trial by jury, and submit the case on an agreed statement of facts.

4. **Practice:** AGREED STATEMENT OF FACTS. An agreed statement of facts dispenses with proof, and the finding thereon is a mere conclusion of law.

5. **Appellate Practice:** AGREED STATEMENT OF FACTS: DECLARATION OF LAW. In an action at law, submitted on a statement of agreed facts, the losing party may, on appeal, have the finding reviewed though no declarations of law were asked or given.

6. **Contract:** EXISTING LAW: CONSTITUTION. Parties to a contract are held to have embodied in it the existing law relating to the subject of the contract; and the fact that such law gives shape to the contract does not impair the obligation of the latter within the meaning of the state or federal constitution.

7. **City:** VIOLATION OF ORDINANCE: APPEAL. A city is entitled to appeal from a judgment for defendant in an action to enforce a penalty declared by an ordinance.

8. ———: ORDINANCE: PENALTY: CONSTRUCTION. Laws are to be construed according to their intent; but, in an action to enforce a penalty, the meaning of an ordinance should not be expanded so as to subject anyone to the penalty, who is not fairly and reasonably within its language.

St. Charles v. Hackman.

9.  Constitution: JURISDICTION OF SUPREME COURT: "POLITICAL SUB-
DIVISION OF THE STATE:" CITY.  A city within a county is not a
"political subdivision of the state," within the meaning of the con-
stitution defining the jurisdiction of the supreme court; but the
question stated in the second headnote, above, being involved in this
case, the supreme court has jurisdiction.

*Appeal from St. Charles Circuit Court.*—HON. E. M.
HUGHES, Judge.

AFFIRMED.

THE ordinance of the city referred to in the opinion
of the division is as follows:—

"*An ordinance* providing for licensing and regula-
ting meat shops or market places in the city of St.
Charles, and State of Missouri.

"Be it Ordained by the city of St. Charles, in the
State of Missouri, as follows:

"Section 1.   No person, firm, corporation or asso-
ciation of persons shall open or keep in the city of St.
Charles, in the State of Missouri, a meat shop or mar-
ket place without first having obtained a license there-
for from the city collector; and any person, firm, cor-
poration or association of persons desiring to engage
in the business of keeping a meat shop or market place
shall first obtain from the city collector a license for
which he, she or they shall pay said collector, for the
use of the city, the sum of fifty dollars per year.   Such
license shall authorize and empower such person, firm,
corporation or association of persons to sell in their
shops all kinds of sound and wholesome fresh and salt
meats, sausage and sausage meats, whether made by
them or not, for one year from the date of such license;
provided that this section shall not be so construed as
to include grocers, who sell hams, shoulders, sides or
middlings, pickle pork, dried beef, bacon and smoked
sausage; and provided further, that it shall not be so

construed as to apply to persons selling fresh meat of any animal, sound and wholesome for food in quantities not less than one quarter of such animal, and poultry and game of all kinds. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five, nor more than one hundred dollars.

"Section 2. Every such license shall contain the name of the person in whose favor it is issued, and shall designate the location where the business is to be carried on, which location shall not be changed without the consent of the mayor endorsed on such license, but such license shall not be transferable or used for the benefit of any person other than the one to whom it shall have been issued.

"Section 3. All such licenses shall be issued in blank, signed by the mayor and countersigned by the city clerk, and said clerk shall deliver the same to the city collector under the same rules and regulations and fees as other blank licenses are delivered, and the collector shall account therefor as in other licenses.

"Section 4. All licenses and transfers of location shall be duly registered by the city clerk in a book kept for such purpose, which register shall contain the name of the owner, the date of issue, the location, date of transfer and the amount paid therefor.

"Section 5. Every person licensed as herein provided, shall keep his store or shop properly cleansed and free from all foul smells and nuisances of every description, and on failure so to do, shall be deemed guilty of a misdemeanor, and on conviction therefor, be fined not less than five nor more than fifty dollars.

"Section 6. It shall be the duty of the city marshal to exercise a general supervision over meat shops or market places, and see that the provisions of this

ordinance are fully complied with; it shall also be his duty to examine the quality and condition of all articles offered for sale at such meat shops or market places, whenever notified so to do by some reputable person, which notice shall be in writing, and shall set forth the grounds of complaint; it shall also be his duty to test the accuracy of the scales, weights and measures used in such meat shops or market places, and if found to be correct to stamp the same with a suitable seal, to be provided by the city, and deliver to the owner a certificate thereof, for all of which certificate and seal he shall receive a fee of fifty cents from the owner; and he shall stamp with the letter "C" each scale weight or measure found to be incorrect, and any person using such condemned scale weight or measure in his business and dealing with his customers, or shall in any manner erase or obliterate the letter "C" so placed on said scales, weights or measures shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be fined not less than three nor more than one hundred dollars for each offense.

"Section 7.   Every licensed keeper of a meat shop or market place who shall knowingly offer for sale, the flesh of any animal which shall have died from sickness, or in any other than the usual manner of animals being slaughtered for food; or shall offer for sale any unsound meat, fresh or salt, or any other unwholesome article of food or the flesh of any animal commonly deemed unwholesome or unfit for food, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than twenty-five nor more than one hundred dollars and in addition thereto forfeit his license.

"Section 8.   All violations of this ordinance shall be prosecuted before the city recorder in like manner as other misdemeanors; and the officers shall receive the

same amount of fees as is provided by ordinance for similar services in other prosecutions.

· "Section 9.    All ordinances or part of ordinances conflicting with this ordinance are hereby repealed; and this ordinance shall take effect and be in force from and after its passage."

*T. F. McDearmon* for appellant.

(1)  The ordinance providing for licensing and regulating meat shops or market places was valid.   R. S. 1889, secs. 1506, 1508; *St. Louis v. Freivogel*, 95 Mo. 533; *St. Louis v. Spiegel*, 90 Mo. 587; *St. Joseph v. Ernst*, 95 Mo. 360; *St. Louis v. Herthel*, 88 Mo. 128. (2) No person not having a license under the provisions of said ordinance could keep a meat shop or market place without incurring the penalty imposed therein. Section 1, ordinance, providing for licensing and regulating meat shops.    (3)  Licenses issued under said ordinance by the express provisions thereof, are not transferable.    Section 2, of said ordinance.    R. S. 1889, sec. 1508.    (4) The license issued to the partnership of Langstadt & Hackman could not be transferred by said firm, nor could anyone upon the dissolution or death of said firm become heir or devisee thereof. Upon the retirement of Langstadt from the partnership of Langstadt & Hackman, the same was dissolved and the license issued to it expired.    The license was a personal privilege granted to the firm of Langstadt & Hackman, and no one else could claim any rights thereunder.    *Gibson v. Kauffield*, 63 Pa. St. 168; *Stokes v. Prescott*, 4 B. Mon. (Ky.) 37; *Mabry v. Bullock*, 7 Dana (Ky.), 337; *Lewis v. United States*, Morris (Iowa), 199; *Long v. State*, 27 Ala. 32; *Calder v. Kurby*, 5 Gray, 597; *License Tax Cases*, 5 Wall. 414; *State v. Hughes*, 24 Mo. 147; *State v. Fredericks*, 16

Mo. 382.   (5) The license which is set up as a defense to this action was issued to the firm of Langstadt & Hackman, and in that name, and not to them jointly in their individual names.   The firm of Langstadt & Hackman, and the individuals composing the firm, are different things or persons, so to speak, and the license to the one can not avail the other for any purpose. Authorities heretofore cited.

*Theodore Bruere & Son* for respondent.

(1) A license to two persons will authorize one of them to sell under it, after the other has retired from the business.   Kelley's Criminal Law and Practice, p. 738, sec. 1061; 2 Bishop's Criminal Law [2 Ed.], p. 701, sec. 989; *State v. Gerhardt*, 3 Jones, L. (N. C.) 178.   (2) The ordinance did not prohibit the defendant from carrying on the business after the retirement of Langstadt.   (3) Although a license granted by a municipal corporation is a mere privilege, it is yet so far within the protection of the law, and to that extent equivalent to a contract right, that it can not be abrogated at any time without sufficient cause. *Hannibal v. Guyott*, 18 Mo. 515; *State v. Andrews*, 26 Mo. 174; *State ex rel. v. Baker*, 32 Mo. App. 101; *State ex rel. v. Meyers*, 80 Mo. 601.

BARCLAY, J.—This action was begun before the recorder of St. Charles to enforce the penalty of a by-law or ordinance of that city.

The defendants at the outset were Frank Hackman, senior, and Frank Hackman, junior.

The complaint was made by the city attorney, on the information of the city collector, charging defendants (in substance) with the breach of an ordinance, in that they kept a meat shop or market place in the city without having first obtained a license, etc.

In the recorder's court a verdict was rendered acquitting the elder Hackman; but the junior was found guilty by a jury, a fine was imposed upon him, and judgment was rendered accordingly. He appealed to the circuit court, which tried the case anew and found for the defendant. From a judgment in accordance with that verdict plaintiff appealed.

The trial in the circuit court was had upon an agreed statement of facts, in which the counsel having charge of the case presented the real issue briefly and clearly. The statement is as follows:

"The City of St. Charles on the 6th day of June, 1892, issued to Langstadt and Hackman (the defendant), a license to carry on a meat shop or market place on the corner of Main and Washington streets in said city, on their payment of fifty dollars to the city collector. They together kept and carried on said meat shop until the 19th day of August, 1892, when Langstadt retired and sold out his interest in said meat shop and said business to defendant and said partnership was dissolved. Defendant then carried on said meat shop at the same place until June 6th, 1893, without taking out a new license in his own name and paying for the same. Plaintiff now brings this action for an alleged breach of an ordinance by defendant, for keeping a meat shop without a license between May 1st, 1893, and June 5th, 1893. Said ordinance is hereto annexed and made a part of this agreement, subject however to all objections of defendant to its legality and to the right of plaintiff to apply the same to this case and to proceed under it against defendant."

(A copy of the ordinance will be printed with the official report of the case.)

1. There can be no doubt under the precedents in this state that the city is entitled to appeal from a judgment for defendant in an action of this sort. *St.*

*Louis v. Sternberg* (1879) 69 Mo. 289; *St. Louis v. Vert* (1884) 84 Mo. 204.

2. The fact that the city is a party does not bring the case within the jurisdiction of the supreme court. A city within a county has been held to be no "political subdivision of the state" as intended by the constitution. *Kansas City v. Neal* (1894) 122 Mo. 232 (26 S. W. Rep. 695).

But one of the questions raised entitles the appeal to a hearing here, as involving a construction of the federal and state constitutions.

3. The case was tried by the court sitting as a jury, and both parties submitted it upon a statement of admitted facts. The mode of trial was proper, the defendant being authorized (in such a case as this) to waive, in that manner, his right to a jury trial.

4. Although the proceeding is a statutory action at law, and no declarations of law were asked or given in the trial court, the finding of the latter on the agreed facts is still reviewable in this court as the case now stands. The plaintiff moved for a new trial in due time, assigning as error that the verdict and judgment were against the law, etc., and it excepted to the overruling of its motion. The agreed facts dispensed with further proof by plaintiff, and the finding then became a mere conclusion of law. The merits of that finding are hence open to review on that record.

5. The appeal of plaintiff rests on the proposition that the license issued by the city, June 6, 1892, to Langstadt and Hackman for a meat shop for one year is no license to the Hackman named therein after Langstadt left the firm in August, 1892.

The defendant, respondent, answers that the license was in effect equivalent to a contract for the privilege it conferred for a given time, and that it could "not be abrogated at any time without sufficient cause."

VOL. 133 mo—41

There are at least two reasons to negative the latter contention.

An occupation tax (imposed in the form of a license as in the case before us) does not create a contract relation between the municipal corporation and the licensee so as to absolutely require the corporation to permit the pursuit of the occupation for the whole period of the license. The corporation in the exercise of police power may even prohibit the occupation during the currency of the term of the license, without thereby impairing a contractual obligation of the city. But whether or not, in such event, the city would be bound to return the license fee need not be decided in this case. We hold the license itself no contract for the whole period, within the protection of the constitution. It does not seem needful to enlarge upon this ruling in view of prior decisions sustaining it. *Phalen v. Virginia* (1850) 8 How. 163; *Aetna Ins. Co. v. Reading* (1888) 119 Pa. St. 417 (13 Atl. Rep. 451); *Sullivan v. Borden* (1895) 163 Mass. 470 (40 N. E. Rep. 859).

Furthermore, there has been no change in the local law since defendant and Langstadt obtained their license. If, as plaintiff claims, the true effect of the ordinance is to terminate the right of either partner to the protection of the license as soon as the firm dissolves, then that effect and meaning would enter into, and become part of the license itself. No constitutional right of the defendant would be violated by enforcing that meaning and construction of the ordinance. In that view of the ordinance defendant would have no ground to complain of the invasion of any contractual right protected by organic laws—even were it conceded that the license created such a right. For it is well settled that parties to a contract are to be held to have embodied in it the existing law relating to the

subject of the contract. *Equitable, etc., Society v. Clements* (1891) 140 U. S. 226.

No claim is made by defendant that the ordinance is unauthorized by the charter of the city.

6. Defendant next insists that the plaintiff's proposition is faulty because it does not correctly interpret the effect and meaning of the ordinance.

The license was granted to "Langstadt and Hackman." They were not described therein as a firm otherwise than as may be inferred from the form in which their names as quoted appear in the license.

Looking at the purpose of the tax and the terms of this ordinance it would seem that a license to two persons to carry on a certain business for a year at a certain place should naturally be interpreted to include the right of one of them to so carry on that business. A license to a firm of two would ordinarily be understood to be a license to one of the firm, on the general principle that the greater includes the less.

The law itself might by its express terms exclude such a construction, or by its minor features indicate an intent to exclude it in a given case. But we think the enactment before us gives no indications of such an intent. It is true that the second section of the ordinance declares that the location of the business (carried on under the license) shall not be changed without the mayor's consent, and that the license "shall not be transferable or used for the benefit of any person other than the one to whom it shall have been issued." But defendant's reliance is not upon a transfer of any interest of Langstadt in the license: it is placed upon the very terms of that document in giving him, Hackman, the privileges it purports to grant. The ordinance does not exhibit any purpose to require any personal merits in licensees to keep meat shops.

It must be remembered that the action in hand is

intended to enforce a penalty. In construing an ordinance, from the standpoint of our present investigation, its meaning should not be expanded so as to subject anyone to a penal liability not fairly and reasonably within its language.

The ordinance by its first section distinguishes between individuals, firms and corporations as licensees under its provisions. But the object of that enumeration of classes appears to be to permit, not only one dealer, but several associated dealers in business at any one shop, to operate under one license, no matter what the form of their association may be. It does not expressly require that each member of a firm shall take out a license in order to avoid the danger of a loss of part of the license fee upon a possible dissolution of a firm in the manner shown in this case. Indeed, it is by no means clear that such separate licenses would answer the exigency of the ordinance for the purpose of partnership operations of such several licensees.

Considering the matter solely on principle, it seems to us that an occupation license for revenue purposes, issued to a firm, should be held a protection to one of its members who continues to prosecute the business at the old stand upon the retirement of his copartner from the business, where there is nothing in the ordinance itself to indicate a different purpose.

7. We have found but little aid in adjudged cases on this subject. The most of those cited to us have turned on the reading of particular laws having little in common with the ordinance under construction. One decision, at least, seems to be opposed to the ruling we make. *Harding v. Hagar* (1874) 63 Maine, 515. But, with all due respect to the court that announced it, we have not been sufficiently impressed with its reasoning to follow it as a precedent.

The following cases, however, appear to give some sanction to the principles we have endeavored to declare: *State v. Gerhardt* (1855) 3 Jones (N. C.) L. 178; *U. S. v. Glab* (1878), 99 U. S. 225 (25 L. ed. 273); *Hinckley v. Ins. Co.* (1885) 140 Mass. 38 (1 N. E. Rep. 737); *U. S. v. Davis* (1889) 37 Fed. Rep. 468.

The judgment of the learned trial judge should be affirmed. It is so ordered. BRACE, C. J., and MAC-FARLANE and ROBINSON, JJ., concur.