[L. A. No. 8936. Department One.—December 9, 1927.]

## T. J. McNAMARA, Respondent, v. J. W. STECKMAN, Appellant.

[1] Broker's Commissions—Action to Recover—Pleading—Amendment.—In an action to recover a real estate broker's commission, where the plaintiff attached to his complaint, through inadvertence, as an exhibit, a copy of a proposed modified agreement of sale, instead of the original agreement, there was no error in the

court permitting him to file an amendment to conform to proof with the original agreement as an exhibit.

[2] Id.—Allowance of Amendments—Discretion of Court.—It is elementary that the allowance of amendments to pleadings to conform to proof rests in the discretion of the court. The utmost liberality is allowed in this respect and no abuse of discretion is shown, unless by permitting the amendment new and substantially different issues are introduced in the case, or the rights of the adverse party prejudiced.

[3] Id.—Modified Terms of Sale — Ability of Purchaser — Acceptance. — The execution of a contract of sale of property by the owner upon terms different from those upon which a real estate agent was authorized to sell is an acceptance of the purchaser by the owner, and is also conclusive proof that the owner was satisfied as to the qualifications of the purchaser and his ability to carry out the terms of the contract.

[4] Id. — Authority of Broker — License — President of Corporation. — The president of a corporation which holds a license to engage in the real estate business is also entitled to engage in such business either individually or as president of the company, although he personally has no license, under the provisions of section 10 of the Real Estate Brokers' Act.

[5] Statutory Construction—Intent.—It is a cardinal rule of construction that a statute, including all its provisions, must be read and considered as a whole in order that the true legislative intention may be determined, and it is also the rule that a statute free from ambiguity or uncertainty needs no interpretation.

(1) 31 Cyc., p. 450, n. 72.   (3) 4 C. J., p. 878, n. 81; 9 C. J., p. 596, n. 32, p. 655, n. 43.   (4) 9 C. J., p. 565, n. 52.   (5) 36 Cyc., p. 1107, n. 31, p. 1128, n. 54.

APPEAL from a judgment of the Superior Court of Los Angeles County. F. M. Jamison, Judge. Affirmed.

The facts are stated in the opinion of the court.

Tanner, Odell & Taft for Appellant.

Fogel & Beman for Respondent.

2.   Trial amendments, note, 5 Ann. Cas. 674. See, also, 21 Cal. Jur. 209; 21 R. C. L. 572, 577.

3.   See 4 Cal. Jur. 592; 4 R. C. L. 309.

5.   See 23 Cal. Jur. 720, 760; 25 R. C. L. 957, 962, 1004.

PRESTON, J.—This is an appeal from judgment in favor of plaintiff in an action to recover an alleged commission of $3,000 earned by him in the sale of certain real estate owned by defendant. The trial court found in substance that defendant, by written agreement of January 8, 1924, employed plaintiff, a duly licensed real estate broker, to sell his said property for $78,000, payable upon the terms stipulated in said agreement, plaintiff to receive for his services a commission of five per cent of the purchase price, and the agreement to continue until terminated by fifteen days' notice to plaintiff; that ·plaintiff waived the right to collect any sum greater than $3,000 as such commission; that on February 2, 1924, prior to any revocation of said agency agreement, plaintiff procured a purchaser ready, able, and willing to purchase said property at the price and according to the terms agreed upon; that on said day defendant, his wife and said purchaser entered into a written agreement of sale and purchase of said property (being exhibit "B" to plaintiff's complaint to conform to proof) at a price of $78,000, $8,000 thereof payable upon execution of the agreement and the balance in stipulated installments; that said purchaser was at all times ready, willing, and able to carry out said agreement and did make the first $8,000 payment therein provided to defendant; that on February 13, 1924, defendant and said purchaser, by written mutual release, canceled said contract of February 2, 1924, the $8,000 initial payment being returned to purchaser; that no part of said five per cent commission was paid to plaintiff, wherefore the court gave judgment in his favor for $3,000, interest and costs.

[1] It appears that shortly after the agreement of sale of February 2, 1924, between defendant and the purchaser was executed, the purchaser returned and attempted to secure defendant's consent to several slight modifications. The principal amendment related to having note secured by trust deed subject to a mortgage of $40,000 instead of $35,000. Defendant refused to accede to the proposed changes. The document as amended was never executed by the parties and later, on February 13, 1924, they signed said mutual release. Up to the date of execution of this release, however, the original contract of sale was in full force and effect.

Through inadvertence plaintiff attached as an exhibit to his amended complaint the proposed modified agreement of sale instead of the original agreement. Therefore the court permitted him to file a complaint to conform to proof with the original agreement as an exhibit thereto. Appellant claims to have been prejudiced by such action, but we hold that no abuse of discretion is shown and that the permitting of the amendment was plainly justified and clearly correct. [2] It is elementary that the allowance of amendments to conform to proof rests in the discretion of the court. The utmost liberality is allowed in this respect, and no abuse of discretion is shown unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced (21 Cal. Jur., pp. 209, 210, sec. 143, and many cases there cited).

[3] Appellant's contention that the broker did not find a purchaser ready, able, and willing to buy the property at the price and terms mentioned in his contract of employment is likewise unfounded. It is true that said employment contract specified that the broker should secure a $21,000 cash payment, but it also contained the following saving clause: " . . . Terms can be arranged satisfactorily *or at any other price or terms that said owner may accept.*" And the owner did in fact accept other price or terms, to wit: those set forth in the agreement of sale. His unqualified acceptance thereof could have been expressed no more plainly than it was by his signature to that document. Furthermore the execution by the owner of said contract of sale is conclusive proof that he was satisfied as to the qualifications of the purchaser and his ability to carry out the terms of the contract. In addition to the above, the record abundantly supports the finding of the court to the effect that the purchaser was ready, able, and willing to carry out the contract. Defendant endeavored to prove that said purchaser had been induced to enter into the sale by false and fraudulent representations of plaintiff, especially to the effect that plaintiff would aid in carrying the financial burden of the deferred payments. However, the court specifically found against defendant on these allegations, and such conclusion likewise has ample support in the record and is final. The principles of law governing the several questions raised by this issue are set forth fully in the case of *Wood & Tatum Co.* v. *Basler,*

37 Cal. App. 381, 383–385 [173 Pac. 1109, 1110], which involved a more or less similar situation, and from that case we quote with approval the following: ''The consideration results from the services performed in securing purchasers for the land upon terms that were agreeable to and ratified by appellant. It is a matter of no consequence that in the beginning somewhat different terms were contemplated. . . .

''As to the extent of the services required of an agent to entitle him to his commission, the rule is well settled and no elaboration is called for. We find in the record ample evidence to show that the parties were able, willing, and ready to complete the purchase, and the failure of the consummation of the sale was due to the neglect of appellant to perfect his title. And, it may be added, that appellant is estopped from objecting to the qualifications of the proposed purchasers for the reason that the evidence brings the case clearly within the principle announced in 4 R. C. L., page 309, as follows: 'Once the customer procured by the broker is accepted by the employer, the latter is thereafter estopped from denying the purchaser's ability or willingness to complete the contract, inasmuch as he is not bound to accept the offer of such person without a reasonable opportunity to inquire and satisfy himself in relation to it. Consequently his acceptance should estop him from denying anything against this claim except fraud on the part of the broker in inducing the acceptance.' '' (See, also, *Carrington* v. *Smithers*, 26 Cal. App. 460 [147 Pac. 225].)

''As we have seen, plaintiff notified defendant of the sale of the property, and informed him who were the purchasers. These parties were all known to the defendant. . . . With knowledge of these things, defendant accepted the deposit of six hundred dollars, approved of the sale in writing, and promised to pay the said commission of five thousand dollars. He thereby accepted said purchasers upon his own responsibility, and could not thereafter dispute their capacity and disposition to make the purchase.'' (See, also, to the same effect, *Sobaje* v. *Schubert*, 37 Cal. App. 709 [174 Pac. 364].)

[4] The real issue to be determined upon this appeal, however, concerns the sufficiency of the evidence to support the finding that plaintiff was a duly licensed real estate broker. He testified that individually he held no license, but that he was president of T. J. McNamara, Incorporated,

a corporation, and produced the license of said corporation to engage in the real estate business for the year 1924, the second paragraph of which reads as follows: "The president of said corporation is also by this license entitled to engage in the real estate business for the term last hereinabove mentioned, such real estate business being said business engaged in during the term of this license, by the corporation aforesaid. . . . " He likewise produced a card certifying as follows: " . . . This statement is to certify that T. J. McNamara is the president of T. J. McNamara, Inc., . . . which was issued Corporation License . . . in accordance with the provisions of chapter 605, Statutes of 1919. . . . (signed) State Real Estate Department, Edwin T. Keiser, Commissioner."

Appellant contends that the sale should have been negotiated and this action brought in the name of T. J. McNamara, Inc.; that inasmuch as plaintiff as an individual held no real estate license, if he had any right at all as a broker to negotiate the sale or to pursue the action, it was a right as president of the corporation only; hence his execution of the contract with defendant and his institution of this action as an individual with reference to his office as president was unauthorized and unlicensed and he cannot recover.

Section 2 of the Broker's Act, Deering's Gen. Laws 1923, page 26, defines a real estate broker, within the meaning of the act, as "a person, co-partnership or corporation who for compensation sells or offers to sell . . . real estate. . . . "

Section 8 provides: "No real estate license shall give authority to do any act mentioned in section two of this act to any person, copartnership or corporation other than those to whom said license is issued; provided, however, that when a license is issued to a corporation the officers thereof, *other than the president,* shall be required to obtain a license. . . . "

Section 9 provides that if the applicant is a corporation the real estate commissioner may require such proof as he . may deem advisable as to the honesty, truthfulness, and good reputation of the officers thereof.

Section 10, providing for license fees, reads in part: " . . . If the licensee be a corporation, the license issued to it

*shall entitle the president thereof to engage in the business
of real estate broker* within the meaning of this act. . . . ''

There is no uncertainty or ambiguity in this clause, and
it cannot be interpreted to mean other than what the word-
ing clearly imports, to wit: that a license to a corporation is
also a license authorizing the president thereof to act as a real
estate broker.   This meaning is made even more plain when
the provision is read in connection with the various other
provisions of the statute, particularly section 8, requiring
all officers other than the president to obtain a license.   The
specific wording of the license itself as above set forth is
likewise significant.   **[5]**   It is a cardinal rule of construc-
tion that a statute, including all its provisions, must be
read and considered as a whole in order that the true legis-
lative intention may be determined (23 Cal. Jur., sec. 134,
p. 760), and it is also the rule that a statute free from am-
biguity or uncertainty, as is this statute, needs no interpre-
tation (*Davis* v. *Hart*, 123 Cal. 387 [55 Pac. 1060]).

If the intent and purpose of the act were merely to au-
thorize the corporation alone to act as broker, what possible
meaning or value could be attached to the clause reading:
''  . . . shall entitle the president thereof to engage in the
business of real estate broker . . . ''?   Would not the vari-
ous references to his authority be merely surplusage?   And
how could or would a licensed corporation act except through
its officers?   We therefore have no hesitancy in concluding
that under said statute a license to a corporation also author-
izes its president to engage in the business of a real estate
broker.

But the further question arises as to whether such authori-
zation extends to acts performed by him as a broker in his
individual capacity in transactions unconnected with the
corporate business.   We are directed to no citation of law
other than the statute itself, and there are no cases in this
state bearing directly on the point.   The purport of deci-
sions from other jurisdictions would appear to harmonize
with the holding that the license also extends to acts per-
formed by the broker in his individual capacity.   In the
case of *Friedland* v. *Isenstein*, 191 Ill. App. 109, 115, it
was held that when a broker's license is issued to a part-
nership, and one of the partners succeeds to the business

of the partnership upon dissolution of the firm and continues business *individually* at the same location, he is to be considered a licensed broker. Quoting with approval from *City of St. Charles* v. *Hackman,* 133 Mo. 634 [34 S. W. 878], the court in that case said: "Looking at the purpose of the tax and the terms of this ordinance it would seem that a license to two persons to carry on a certain business for a year at a certain place should naturally be interpreted to include the right of one of them to so carry on that business. A license to a firm of two would ordinarily be understood to be a license to one of the firm, on the general principle that the greater includes the less."

Would any advantage be gained by requiring a president of a licensed corporation to secure a second permit if he desired to negotiate a sale as an individual? "The single primary purpose of the (Brokers') act (as defined in the case of *Riley* v. *Chambers,* 181 Cal. 589, 593 [8 A. L. R. 419, 185 Pac. 855]), is to require of real estate brokers and salesmen that they be 'honest, truthful, and of good reputation.' All of its provisions, including the requirement of a license, are but incidental to this single purpose and designed to accomplish it." (*Riley* v. *Chambers, supra.*) Now, this single, primary purpose of the act is accomplished both as to the corporation and its president, whether he acts for the company or individually, through compliance by the real estate commissioner with the requirement of section 9 that he secure such proof as he deems advisable as to the honesty, truthfulness, and good reputation of the officers of an applicant corporation. It would certainly be illogical to have the commissioner institute two inquiries into the qualifications of the officer and then issue two permits to him, one as president and one as an individual. If the commissioner is satisfied as to his honesty, integrity, and truthfulness as an officer, he cannot question his possession of like qualities as an individual. We hold that under said statute the president of a licensed corporation is authorized by the corporate license to conduct the business of a real estate broker either as such president or as an individual.

We are not concerned in this case with the question as to whether plaintiff should turn over to the corporation the amount of the commission received by him, for that is a dis-

tinct and separate matter to be adjusted between his corporation and himself.

Judgment affirmed.

Curtis, J., and Seawell, J., concurred.

Hearing in Bank denied.

Langdon, J., dissented.