[Civ. No. 6540. Second Appellate District, Division Two.—March 31, 1931.]

W. T. VICKERY, Respondent, v. L. B. VALDEZ et al., Appellants.

Miller & Casaday for Appellants.

W. Claire Anspach for Respondent.

ARCHBALD, J., *pro tem.*—This is an appeal by the defendants from a judgment for $1250, interest and costs in favor of plaintiff.

Plaintiff, acting as real estate broker, obtained a written offer from one Fannie M. Koenigstein to exchange an equity in a certain described property belonging to her for certain property owned by the defendants, known as 1606 East Broadway, Glendale, California. The offer was dated August 17, 1927, and provided that it should be void if not accepted "before 12 o'clock noon, Monday, August 22nd, 1927". The following acceptance, written in purple ink and signed by both defendants, appears under the offer: "I accept the above offer with the following changes 1st that I am able to get a first loan of $10,000 to $11,500 at 8% for five yrs.— 2*th* that central ave. lot equity is to be 6000.00 as 1st payment—3*th* that buyer will make payments of $75.00 or more per mo. including Int. 8%. I include furniture in 1604½ as is except I will add set of dishes, and change dining set. I also agree to pay W. T. Vickery $1250.00 as my part of the commission for services rendered. Buyer to assume light assess on 1606." On the right-hand margin of the contract, written in purple ink, is the following: "Possession of property at 1606 E. Bdy. to be given on or before Sept. 12th, 1927." Under this are the initials of both defendants and Fannie M. Koeningstein. The offer provided also that possession was to be given September 1, 1927. On the left-hand margin of the contract, written in green

ink, is the following, signed by Fannie M. Koenigstein: "8/24/27 I accept the following changes".

Plaintiff testified that he told defendants he would help them get a loan for from $10,000 to $11,500, and took a signed application from defendant L. B. Valdez, which was turned into the C. E. Kimlin Company, who in turn presented it to the National Mortgage Company, which latter organization advised that the application was approved for a loan of $10,000. It was testified that the rate of interest was eight per cent, with a commission of five per cent for obtaining the loan. Plaintiff also testified that defendant L. B. Valdez objected to paying a commission of five per cent and stated that he had a friend whom "he was certain would make a loan and that he could save on that". The defendant L. B. Valdez testified, with regard to obtaining the loan, that he spoke to a Mr. Hutchinson about obtaining it but did not make an application to him, "because I told him that I wanted the loan then and he was satisfied that he could take care of it". He also said that when the plaintiff told him he would get him a loan "at that price why I told him that I didn't want to bother with that loan with him because I could, I says, 'I can get a loan myself at that price.'" Defendant L. B. Valdez also testified that the written offer was brought to him and signed by him after 12 o'clock noon on August 22d, and both defendants testified that they did not know that Mrs. Koenigstein had accepted the conditions imposed by their acceptance until the time of trial. Plaintiff, however, testified that he told them about it the next day after Mrs. Koenigstein approved the changes made by them.

Appellants contend that the judgment should be reversed because: (1) plaintiff did not prove that he was a licensed real estate broker; (2) the amended complaint does not state a cause of action; (3) plaintiff was agent for both parties and cannot recover a commission from either; (4) plaintiff did not present a customer who was ready, willing and able to perform her contract of purchase; (5) the relationship was fiduciary and the utmost good faith must have prevailed; (6) of failure of consideration; (7) no tender of deed was made by Mrs. Koenigstein; (8) no competent proof was offered that a loan was ever obtained by plaintiff or offered to defendants; (9) there is no evidence to support

finding No. III, to the effect that defendants accepted the offer of purchase secured for them by plaintiff at their special instance and request, and that all the terms and conditions of defendants' acceptance were complied with and defendants were able to get a first loan of $10,000 to $11,500 at eight per cent for five years; (10) there is no evidence to support finding No. V, to the effect that plaintiff made no false or fraudulent representations to defendants whatsoever. Appellants also contend that the offer had expired before it was accepted by them.

1. It appears from the evidence that respondent did not produce a broker's license at the trial, and his counsel at the close of the examination of his last witness stated to the court that that was all except for sending to Sacramento to get a certificate for the year 1927, whereupon the following took place: "The Court: I see you have alleged in the complaint that he is a licensed broker; that he has filed his license; is this on file? Mr. Miller: Have I denied that? The Court: Yes, it is denied on lack of information. You can't deny a record on lack of information; this is a matter of public record." The record in the trial court is silent as to any further offer to prove that respondent was in fact such a licensed broker, although the court made a finding to that effect. The amended complaint alleges in paragraph 1, "that the plaintiff is, and was at all times herein mentioned a real estate broker, duly licensed and qualified to practice his profession in the State of California".' Such allegation is denied in the answer as follows: "For want of information, the defendants having no information at all, they deny the allegations of paragraph 1 of the complaint, and pray strict proof of the license and qualifications of the plaintiff as a broker."

The Real Estate Brokers' License Act (Stats. 1923, p. 93, and subsequent amendments; Stats. 1925, p. 600; Stats. 1927, pp. 481, 580, 677 and 900) nowhere expressly provides that the real estate commissioner shall keep a record of the applications for licenses and his action thereon, yet it does require him to publish on or about March 1st and August 1st of each year "a directory or list of licensed brokers and salesmen . . . and mail a copy thereof to each licensed broker without charge". It also provides that application for license "shall be made in writing to the real estate com-

missioner" and that such applicant shall "file with said real estate commissioner" a satisfactory bond for the faithful performance of their duties, upon which action may be brought by any person injured by the failure or omission of any broker to comply with the provisions of the act or to perform his duties thereunder, which bond it is made his duty to keep good. The commissioner is required to collect certain fees for the licenses issued and is authorized "to investigate the actions of any person, copartnership or corporation engaged in the business or acting in the capacity of a real estate broker, or a real estate salesman, within this state, and shall have the power to temporarily suspend or permanently revoke" licenses issued under the act for certain specified causes. It is difficult to see how the real estate commissioner could carry on the duties of his office without keeping a record of the licenses issued by him. The application is necessarily made to him and the bond filed with him. If no record were kept of his action thereon he could not make the March and August reports required of him, nor would he have the names and addresses of the "licensed brokers" to whom the lists of brokers and salesmen are required to be mailed. The commissioner is further required to investigate the actions of anyone engaged in the real estate business, and unless a record is kept he could not tell whether they were duly licensed brokers or not, nor whether they had a license to temporarily suspend or permanently revoke, as he is authorized to do on a proper showing. So from necessity as well as convenience in the discharge of his official duties such a record must be kept by him, and when so kept it becomes a public record, *People* v. *Tomalty*, 14 Cal. App. 224 [111 Pac. 513]), and its existence cannot be put in issue by a denial upon information and belief (*Art Metal Const. Co.* v. *Anderson*, 182 Cal. 29 [186 Pac. 776]). The fact that the record in question might be in Sacramento would not seem to make it so inaccessible as to take it out of the rule. (*Purexo Products Co.* v. *Yamate*, 98 Cal. App. 65 [276 Pac. 597].)

The denial is also insufficient to raise such an issue for the reason that it is based only on lack of information. Section 437 of the Code of Civil Procedure requires a postitive denial unless the defendant "has no information *or belief* upon the subject sufficient to enable him to answer"

the allegation of the complaint. There must be a lack of both information and belief to make such a denial effective. (*Curtin* v. *Salomon*, 80 Cal. App. 470, 474 [251 Pac. 237].)

Appellants, however, contend that under section 20 of the Real Estate Brokers' Act the existence of such license must not only be alleged but proved. Such section reads: "No person, copartnership or corporation engaged in business or acting in the capacity of a real estate broker or a real estate salesman within this state shall bring or maintain any action in the courts of this state for the collection of compensation for the performance of any of the acts mentioned in section two hereof without alleging and proving that such person . . . was a duly licensed real estate broker . . . at the time the alleged cause of action arose." In our opinion the effect of requiring such a plaintiff to "allege and prove" that he is a licensed broker is simply to put the burden of both alleging and proving that fact upon him. It is necessary to allege such fact in order to state a cause of action (*Silverberg* v. *Baum*, 95 Cal. App. 535 [273 Pac. 47]), but there would seem to be no necessity for proving such a fact if it is admitted by either failure to deny or by stipulation. The state would seem to have no particular interest in demanding that such be done in the face of an admission, and yet if appellants' contention is carried to a logical conclusion such a fact would have to be proved even though stipulated to be true. Section 2468 of the Civil Code provides: "No person doing business under a fictitious name . . . shall maintain any action upon or on account of any contract or contracts made, or transactions had under such fictitious name, in any court of this state until the certificate has been filed and the publication has been made as herein required." There is a positive prohibition and yet it is purely a matter of defense, and the plaintiff is not required either to allege or prove such a fact. (*Cook* v. *Fowler*, 101 Cal. 89 [35 Pac. 431].) The same is true of section 299 of the Civil Code, which provides that a corporation failing to file certified copies of its articles of incorporation as required "cannot maintain or defend any action or proceeding in relation to . . . property, its rents, issues or profits" until such certified copy is so filed. (*Ontario State Bank* v. *Tibbits*, 80 Cal. 68 [22 Pac. 66].) It would seem that the addition to such section

of the requirements of alleging and proving, as in section 20 of the Real Estate Brokers' Act, could have no more effect than that of shifting the burden of proof of the fact to the plaintiff in the action, which in our opinion is the purpose of the requirement in the Real Estate Brokers' Act.

2. The contract seems to be sufficiently clear and plain to be enforced by both parties, and the amended complaint appears to state a cause of action.

3. The evidence shows that appellants knew that respondent was representing both parties. The agreement to pay commission to respondent, signed by appellants, indicates that the latter expected the other party to the negotiations to pay a commission, and under such circumstances they cannot complain that the agent represented both in the transaction. (*Jauman* v. *McCusick,* 166 Cal. 517 [137 Pac. 254].)

4. In accepting the offer made by Mrs. Koenigstein appellants admitted her readiness, willingness and ability to perform her part of the contract, and in fact accepted her as a satisfactory purchaser presented by respondent; and the latter's right to the agreed commission was not contingent upon the consummation of the sale. (*Sobaje* v. *Schubert,* 37 Cal. App. 709 [174 Pac. 364].)

There would seem to be no merit in appellants' contentions Nos. 5, 6, 7, 8, 9 and 10. As we have said, appellants knew that respondent was representing both parties, and there is nothing in the record to show any lack of good faith so far as he is concerned. Respondent did all he was required to do under the contract when he obtained Mrs. Koenigstein's consent to the changed conditions imposed by appellants' acceptance of her offer. The contract did not impose upon him the obligation to secure the loan mentioned, and there is evidence from which the court could conclude, as it did, that appellants were able to obtain the loan, and that is all the conditions require. The court admitted evidence to the effect that respondent said he would get a loan satisfactory to appellants, and that "if we were not satisfied that there was no deal, those were Mr. Vickery's words". There is other evidence directly in conflict with that, and the court made a finding contrary to such evidence. The offer of Mrs. Koenigstein was accepted by appellants, and the fact that she might have placed herself in a

position where she could not perform at a later date, or did not tender a deed to appellants, did not affect respondent's right to recover. The requirement that the offer should be void if not accepted before noon of August 22d was placed in the offer for the benefit of Mrs. Koenigstein, who made it, and it would appear not only that she waived it by accepting the changes proposed by appellants but that both parties changed ·the date of possession by notation in the margin after the acceptance by appellants; so we do not see how the latter can complain. The trial court found contrary to appellants' contentions and there is evidence in the record to support such findings; and even though on the face of the record we might be disposed to find contrary thereto, the action of the trial court cannot be disturbed on appeal.

Judgment affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.