## Appellate Department, Superior Court, San Diego

[Civ. A. No. 177538.    Feb. 18, 1953.]

WALLACE G. MOORE et al., Respondents, v. BALBOA ESCROW COMPANY (a Corporation) et al., Appellants.

Yale & Yale for Appellants.

James B. Abbey and James S. Lowrie for Respondents.

BURCH, J.—This appeal is from a judgment for plaintiffs, rendered by the court sitting without a jury in an action to recover a broker's commission paid by plaintiffs to defendant Looper. The facts are not in dispute.

On July 19, 1951, plaintiffs gave defendant Looper a 30-day exclusive business opportunity listing "to sell" their business known as Golden Pheasant Cocktail Bar, with equipment, and an on sale general liquor license to any purchaser "acceptable" to plaintiffs for $22,000, and agreed to pay a 10 per cent commission. On August 7th next, plaintiffs and Victor and Violet Ganil, through escrow instructions with defendant Balboa Escrow Company, executed a purchase and sale contract for the properties at a price of $19,000. Plaintiffs accepted a deposit in escrow of $10,000 and directed the escrow agent to pay $1,000 as commission earned to the defendant Looper, and thereafter ordered disbursed the balance of the $10,000 deposit. However, before the sale was consummated, some question arose as to the ability of the Ganils to qualify under the law as transferees of the liquor license. Mr. Ganil assigned his interest to Mrs. Ganil. The parties again modified their contract on October 19, 1951, through a second escrow opened with defendant Balboa Escrow Company, which evidenced a sale by Mrs. Ganil to one Vital Haynes of all the properties they had purchased from plaintiffs, except the license, the consideration for which was $10,224.58 cash and $8,775.42 by secured promissory note payable to plaintiffs. This sale was then consummated.

As part of this latter transaction plaintiffs, with the approval of the Board of Equalization, transferred the liquor license directly to Vital Haynes. It was stipulated at the trial that one Berry, if called, would testify that Mr. Ganil would have been unable to qualify with the Board of Equalization and that Mrs. Ganil could qualify only if Mr. Ganil had nothing to do with respect to the business operated by her. This evidence was received on the question whether the Ganils, as purchasers, had the qualifications to satisfy the implied duty of the broker under his employment contract to introduce to the owner a purchaser "ready, willing and able" to buy. We have some doubt as to whether a witness is competent to foretell what action might be taken were the question before the board officially in the exercise of its administrative discretion as vested in it by law. (See Anno: The Doctrine of Primary Administrative Jurisdiction, 96 L.Ed. 585; *Far East Conference* v. *United States,* 342 U.S. 570 [72 S.Ct. 492, 96 L.Ed. 576]; *Zottman* v. *San Francisco,* 20 Cal. 96 [81 Am. Dec. 96].) ▮ Putting that question to one side, we think the employment contract was fully performed when the plaintiffs executed a valid contract with the purchaser produced by the broker; that from that time the owner carried all the responsibility for the purchaser's qualifications, barring fraud or actionable mistake. (See *Edwards* v. *Billow,* 31 Cal. 2d 350, 359, 360 [188 P.2d 748].) The rule is thus stated in Restatement of Agency, section 445.

Illustration: "P promises to pay A a commission on land sold by P to customers produced by A, a broker. A introduces T, who executes with P an enforceable contract for the purchase of the land. T fails to perform. A is entitled to his commission."

California cases are in accord.

▮ "Furthermore, the execution of a contract of sale by the owner of real property is conclusive proof that he was satisfied as to the qualifications of the purchaser and of his ability to perform the contract, thus rendering the owner liable for the payment of the broker's commission. (*Mc-Namara* v. *Steckman,* 202 Cal. 569, 572 [262 P. 297]; *Deeble* v. *Stearns,* 82 Cal.App.2d 296, 299 [186 P.2d 173].)"

(*Ralston* v. *Demirjian,* 86 Cal.App.2d 124, 126 [194 P.2d 41].)

See, also, the following cases: *Malmstedt* v. *Stillwell,* 110 Cal.App. 393 [294 P. 41]; *Vickery* v. *Valdez,* 113 Cal.App.

135 [298 P. 151] ; *Grove* v. *Lewis,* 125 Cal.App. 357 [13 P.2d 847].

The case is the same for a business opportunity broker—the employment contract gives the measure of the broker's right. (*Rutherford* v. *Berick,* 82 Cal.App.2d 331 [186 P.2d 23].)

The words "to sell" in the listing have uniformly been considered as only authority to introduce an acceptable purchaser. (*Holway* v. *Malloy,* 70 Cal.App.2d 317, 319, 320 [160 P.2d 893].)

"If the . . . owner is dissatisfied with the purchasers . . . he should . . . decline to enter into the contract of sale, but where he accepts them as worthy of confidence, without being misled in any respect by the broker, he is bound to pay for said services."

(*United States Farm Land Co.* v. *Darter,* 42 Cal.App. 292 [183 P. 696].)

Neither do we think there was here any mutual mistake to invalidate the contract. There is no mistake. All parties were well aware that the purchasers were required by law to have the transfer of the liquor license approved by the Board of Equalization. If all parties assumed on August 7th that this approval would be forthcoming and later became doubtful, the owners' estoppel by contracting and use for themselves of the $10,000 principal would nonetheless apply to the facts of the case. Had the owners refused to contract until the administrative fact was settled, the broker's right would not be established. But, by entering into a binding contract, the owners will either consummate the sale or have a right of action on the contract to compensate them for their loss through its breach, and they should therefore pay for the services which obtained them these rights.

Judgment reversed, with costs to defendants.

Turrentine, P. J., and Glen, J., concurred.